J-A19020-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN JAMES VORRADO | |
| Appellant | No. 19 EDA 2015 |

Appeal from the Judgment of Sentence November 6, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010279-2012

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:  **FILED OCTOBER 03, 2016**

Brian James Vorrado appeals from the judgment of sentence entered November 6, 2014, in the Philadelphia County Court of Common Pleas. The trial court imposed an aggregate term of 13 to 45 years' imprisonment, following Vorrado's guilty plea to charges of aggravated assault, robbery, and possessing an instrument of crime ("PIC").[1] On appeal, Vorrado contends the trial court erred when it denied his pre-sentence motion to withdraw his guilty plea. For the reasons below, we affirm.

The Commonwealth provided the following factual basis for the plea at Vorrado's guilty plea hearing:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 2702(a), 3701(a)(1), and 907(a), respectively.

[O]n March 20, 2012, at around 6:55 in the evening in the area of 2627 Muhlfeld [] Street in the city and county of Philadelphia … Cecilia Wasko and her brother, Salvatore DeMarco, were home at their residence … when [] Vorrado AKA Vincent Car[r] came into the property demanding that his money be returned.

[Vorrado] proceeded to break a chair and remove the chair leg from the chair. He began to strike Salvatore DeMarco with the chair leg and when Cecilia Wasko came up to aid her brother[, Vorrado] did strike Cecilia Wasko on her face and ripped – demanded that she provide her money – the money to [him] and proceeded to rip her wallet off of her neck that she had on the lanyard around her neck.

…[H]e also pushed or pulled Cecilia Wasko down a flight of stairs which caused her to break numerous bones in her face.

The Commonwealth would also present the live testimony of Officer Thomas Brown … who had indicated that he arrived on the scene and did see Ms. Wasko at the bottom on the stairs bleeding profusely on or about her face and coughing up blood. [Officer Brown would also testify that Ms. Wasko identified Vorrado as the person who struck her and robbed her. **See** N.T. 4/11/2014, at 21.]

…[T]he complainant was transported to Mercy Fitzgerald Hospital where she did received treatment on a couple of occasions for the injuries to her face, [including] multiple broken bones.

N.T. Guilty Plea 2/10/2014, at 9-10.

Vorrado was arrested and charged with aggravated assault, robbery, receiving stolen property, theft, PIC, simple assault, and recklessly endangering another person ("REAP").[2] His preliminary hearing was re-scheduled twice when Wasko failed to appear for court. At the third listing,

_____

[2] **See** 18 Pa.C.S. §§ 2702(a), 3701(a)(1)(ii), 3925(a), 3921(a),907(a), 2701(a), and 2705, respectively.

on August 28, 2012, Wasko finally testified against Vorrado and the charges were held for court.[3] However, on December 10, 2012, prior to trial, Wasko died of a drug overdose. Thereafter, the Commonwealth filed a motion seeking to admit her testimony from the preliminary hearing at Vorrado's trial. The trial court granted the motion on April 16, 2013.

Vorrado's case was scheduled for trial on February 10, 2014. Prior to jury selection, Vorrado presented a motion *in limine* seeking to preclude the Commonwealth from introducing at trial prison telephone calls in which Vorrado discussed Wasko's initial failure to appear and her subsequent death. The court denied the motion. *See* Order, 2/10/2014. Vorrado was also informed that he faced a mandatory minimum sentence of 25 years imprisonment under the "three strikes" statute. *See* N.T. Motion Volume I, 2/10/2014, 7-10; 42 Pa.C.S. § 9714(a)(2). The case then proceeded to jury selection.

Immediately after jury selection was completed, Vorrado decided to enter an open guilty plea to the charges of aggravated assault, robbery and PIC. In exchange for the plea, the Commonwealth de-mandatorized the offenses so Vorrado would not be subject to the "three strikes" law. *See*

---

[3] We note Vorrado was also originally charged for his assault on Wasko's brother, Salvatore DeMarco. However, those charges were dismissed after the third preliminary hearing when DeMarco failed to appear to testify. *See* N.T., 8/28/2012, at 21-22.

N.T., Guilty Plea Volume 1, 2/10/2014, at 5. Sentencing was deferred until April 11, 2014, for the completion of a presentence investigation report.

Thereafter, Vorrado filed three *pro se* motions: (1) a motion to withdraw his guilty plea, (2) a motion for removal of counsel, and (3) a motion for continuance.[4] At the April 11, 2014, sentencing hearing, new counsel, Lou Mincarelli, Esq., entered his appearance for Vorrado, and prior counsel was permitted to withdraw. Following an *in camera* hearing to discuss Vorrado's purported cooperation with law enforcement, Mincarelli formally withdrew Vorrado's *pro se* motions, including his motion to withdraw his plea. Although Mincarelli wished to continue the sentencing hearing "to do further research to prepare adequately … for the sentencing[,]"[5] the Commonwealth explained that it needed to preserve the testimony of Officer Brown, who, in a few days, was being deployed for military service in Abu Dhabi until November of 2014. **See** N.T., 4/11/2014,

_____

[4] In the motion to withdraw his plea, Vorrado claimed he was "innocent of the charges he pled guilty to[,]" but felt coerced into entering a plea because of the threat of several high range sentences. Motion to Withdraw Guilty Plea, 3/14/2014, at 1. In his motion seeking counsel's removal, he asserted counsel failed to file "multiple motions" and "speedballed" him into entering the guilty plea. Motion to Remove Attorney, 4/4/2014, at 1. Further, in his motion for a continuance, Vorrado requested additional time to retain new counsel, and present evidence of his active participation as an "informant/operative in[] a major high profile federal investigation/probe[.]" Motion for Continuance, 4/4/2014, at 1.

[5] N.T., 4/11/2014, at 8.

12-13. Therefore, the court agreed to bifurcate the hearing, and after Officer Brown testified, sentencing was continued until August 7, 2014.

However, on August 1, 2014, Vorrado filed a counseled motion to withdraw his guilty plea. Specifically, he asserted (1) "his innocence of the charges to which he pled guilty[;]" (2) the Commonwealth would not be prejudiced if he were permitted to withdraw his plea; (3) prior counsel "pressured him" into entering the plea; and (4) "he was confused as to the potential ramifications of his guilty plea and the elements of the crimes to which he pled guilty." Motion to Withdraw Guilty Plea, 8/1/2014, at ¶¶ 9, 11-13. The court scheduled a hearing on Vorrado's motion for September 11, 2014. At the conclusion of the hearing, the court denied the motion. Vorrado filed a timely motion for reconsideration, which the trial court denied on September 29, 2014.

On November 6, 2014, Vorrado was sentenced to an aggregate term of 13 to 45 years' imprisonment.[6] He filed a post-sentence motion claiming the trial court improperly denied his motion to withdraw his plea. The trial

_____

[6] The court imposed a term of six to 20 years' imprisonment for the charge of aggravated assault, a consecutive term of six to 20 years' imprisonment for the charge of robbery, and a consecutive term of one to five years' imprisonment for the charge of PIC.

court denied the motion on November 26, 2014, and this timely appeal followed.[7]

On appeal, Vorrado contends the trial court abused its discretion and misapplied the law when it denied his pre-sentence motion to withdraw his guilty plea. He claims his timely, unconditional assertions of innocence "constituted fair and just reasons for allowing his plea to be liberally withdrawn." Vorrado's Brief at 18. Moreover, he notes that, in addition to his claim of innocence, he made "numerous colorable demonstrations as to the reasoning behind his articulation of innocence[,]" namely, that he had been coerced to enter the plea by his attorney, and that he never reviewed the elements of the crimes charged. *Id.* at 19-20. Vorrado also argues the trial court abused its discretion in finding the Commonwealth would have been substantially prejudiced if he were permitted to withdraw his plea. *Id.* at 41-42.

It is well-settled the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court. ***Commonwealth v. Unangst***, 71 A.3d 1017, 1019 (Pa. Super. 2013) (quotation omitted). However, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after

---

[7] On April 9, 2015, the trial court ordered Vorrado to filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Vorrado complied with the court's directive, and filed a concise statement on April 22, 2015.

sentencing. When a defendant seeks to withdraw a plea after sentencing, he "must demonstrate prejudice on the order of manifest injustice." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1046 (Pa. Super. 2011). However, a pre-sentence motion to withdraw is decided under a more liberal standard. Pursuant to Pennsylvania Rule of Criminal Procedure 591:

> At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.

Pa.R.Crim.P. 591(A).

In the seminal decision *Commonwealth v. Forbes*, 299 A.2d 268 (Pa. 1973), the Pennsylvania Supreme Court first defined the parameters for granting a pre-sentence motion to withdraw:

> [I]n determining whether to grant a pre-sentence motion for withdrawal of a guilty plea, 'the test to be applied by the trial courts is fairness and justice.' If the trial court finds 'any fair and just reason', withdrawal of the plea before sentence should be freely permitted, unless the prosecution has been 'substantially prejudiced.'

*Id.* at 271 (internal citations omitted). Recently, the Supreme Court reaffirmed the *Forbes* ruling, stating:

> [The] *Forbes* decision reflects that: there is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth. *See Forbes*, 450 Pa. at 190–91, 299 A.2d at 271.

*Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1291-1292 (Pa. 2015).

Since the **Forbes** decision, the courts of this Commonwealth have wrestled with the determination of what constitutes a "fair and just reason" for withdrawal of a guilty plea. Until recently, the Supreme Court adopted the view that a defendant's bald assertion of innocence was sufficient. **See Commonwealth v. Randolph**, 718 A.2d 1242, 1244 (Pa. 1998) (defendant's claim that he was innocent of several of the 13 burglary charges to which he pled guilty was sufficient to justify pre-sentence withdrawal of plea; "[a]ppellant made a clear assertion of his innocence before the trial court … [and] the uncontroverted evidence of record fails to reveal that the Commonwealth would have suffered any prejudice, let alone substantial prejudice, had [a]ppellant's withdrawal request been permitted.") (footnote omitted).

However, in **Commonwealth v. Tennison**, 969 A.2d 572, 577 (Pa. Super. 2009), *appeal denied*, 982 A.2d 510 (Pa. 2009), a panel of this Court upheld a trial court's decision to deny a defendant's pre-sentence motion to withdraw his plea when his assertion of innocence was "conditional." In that case, the court found the defendant invoked his innocence in order to delay his sentencing hearing, so that he could be sentenced first on a separate federal matter: "Indeed no sooner would the [innocence] assertion be made than it would be completely contradicted by statements admitting guilt should sentencing be deferred until resolution of the federal case." **Id.** The panel opined:

- 8 -

> Our jurisprudence has stressed that the individual's fundamental right to a trial requires a liberal granting of pre-sentence motions to withdraw guilty plea. Yet, it has also recognized there is no absolute right to a pre-sentence withdrawal of a plea, and has issued clear holdings that the denial of such a motion is proper where the evidence before the court belies the reason offered.
>
> Statements made both by counsel and Appellant during proceedings undermined the credibility of the assertion of innocence made to the court. Under the specific facts of this case, therefore, we cannot hold the court erred as a matter of law when it determined the assertion was simply pretextual, and thus failed to provide a fair and just reason to set aside Appellant's guilty plea.

*Id.* at 578.

Subsequently, an *en banc* panel of this Court, in **Commonwealth v. Katonka**, 33 A.3d 44, 49 (Pa. Super. 2011) (*en banc*), distinguished **Tennison** by limiting that decision to its facts, and re-asserted the **Forbes** standard. In **Katonka**, the defendant did not state his innocence in his written motion to withdraw the plea, but rather first claimed he was innocent during the motion hearing only after the Commonwealth pointed out that he had failed to do so. The trial court denied the motion to withdraw, finding the defendant's assertion of innocence "incredible." *Id.* at 46. In reversing the trial court's decision, the *en banc* panel held:

> Here, unlike the circumstances in **Tennison**, Katonka specifically asserted that he was innocent of the crimes and this assertion was neither contradictory nor conditioned on some other event. The fact that Katonka first asserted his innocence only after being prompted by the District Attorney is of no moment as Katonka asserted his innocence prior to sentencing on two separate occasions without condition, the second without any prompting from the District Attorney.

*Id.* at 49 (internal citations omitted). The **Katonka** Court also specifically criticized the trial court for "rendering a credibility determination as to the defendant's actual innocence." **Id.** Rather, the *en banc* panel opined: "[A]s the record reflects that Katonka twice clearly asserted his innocence without condition, under **Forbes** and **Randolph**, there was a 'fair and just' reason for withdrawal of the plea." **Id.** at 50.

Most recently, however, in **Carrasquillo**, **supra**, the Pennsylvania Supreme Court retreated from the *per se* approach it advocated in **Forbes**. There, the defendant first asserted his innocence during his sentencing allocution, claiming he had been framed by the Central Intelligence Agency and possessed by the "Antichrist," and insisting a polygraph test would prove his innocence. **Carrasquillo**, **supra**, 115 A.3d at 1286. The trial court, however, denied his motion to withdraw, finding the defendant's innocence claim was "implausible, insincere, and 'nothing more than an attempt to manipulate the justice system' by introducing a belated competency-based defense." **Id.** at 1287. A divided *en banc* panel of this Court later reversed based upon the **Forbes** standard, noting "trial courts are 'not permitted to make a determination regarding the sincerity of [defendants'] unambiguous claims of innocence.'" **Id.** at 1288.

The Supreme Court, however, reversed the *en banc* panel on appeal. The **Carrasquillo** Court stated the "existing *per se* approach to innocence claims is unsatisfactory." **Id.** at 1292. The Court explained:

Presently, we are persuaded by the approach of other jurisdictions which require that **a defendant's innocence claim must be at least plausible** to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is **whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice**. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

*Carrasquillo*, *supra*, 115 A.3d at 1292 (citation omitted and emphasis supplied).

The Supreme Court concluded the trial court had acted within its discretion when it denied the defendant's motion to withdraw his plea. The Court emphasized the defendant's claim of innocence was first made during his sentencing allocution, and was accompanied by "bizarre statements" which "wholly undermined its plausibility, particularly in light of the Commonwealth's strong evidentiary proffer at the plea hearing." *Id.* at 1293.

Notably, the Supreme Court came to the same conclusion in a companion case decided the same day, *Commonwealth v. Hvizda*, 116 A.3d 1103 (Pa. 2015). In *Hvizda*, the defendant entered a guilty plea to first-degree murder and possessing an instrument of crime for the stabbing death of his estranged wife. *Id.* at 1104. At his sentencing hearing two months later, the defendant sought to withdraw his plea, stating simply "I'm here to maintain my innocence in the charge of murder in the first degree." *Id.* At a subsequent hearing, the defendant again stated he was innocent,

but offered no evidence in support of his claim. The Commonwealth requested the court deny the motion, and, in support, introduced into evidence the defendant's telephone conversations from prison in which he stated that although he "'did it' … he wished to stand trial to 'get some of the story out.'" *Id.* The trial court thereafter denied the motion to withdraw, finding "the Commonwealth had 'presented compelling and unique evidence to establish [the defendant's] bald assertion of innocence was at best pretextual and an attempt to manipulate the system.'" *Id.* at 1105. A divided panel of this Court reversed on appeal based upon its belief that, under ***Katonka***, "credibility assessments relative to a defendant's claim of innocence were impermissible." *Id.*

The Supreme Court, once again, disagreed with the decision of this Court and opined:

> In the companion case of ***Carrasquillo***, … we have determined that a bare assertion of innocence—such as [the defendant] provided as the basis for withdrawing his guilty plea—is not, in and of itself a sufficient reason to require a court to grant such a request. ***See Carrasquillo***, [] 115 A.3d at 1285. Accordingly, and for the reasons set forth more fully in that case, the common pleas court did not err in denying [the defendant's] withdrawal motion.

*Id.* at 1107.[8]

---

[8] We note the ***Hvizda*** Court also rejected the Commonwealth's argument that the post-sentence "manifest injustice" standard applied under the facts of that case because the only possible sentence the trial court could have imposed was life imprisonment. In doing so, the Court disapproved of its prior decision in ***Commonwealth v. Lesko***, 467 A.2d 307 (Pa. 1983),

*(Footnote Continued Next Page)*

With this background in mind, we consider the ruling of the trial court in the present case. The court first determined Vorrado did not provide a "fair and just reason" for the pre-sentence withdrawal of his guilty plea. The court opined:

> [T]his Court could not ignore the conditional basis of [] Vorrado's claims when evaluating [his] request to disregard his plea of guilt. This Court duly considered [Vorrado's] previous conniving efforts to prevent the victim's appearance in court with "assisted" drug abuse, his designed delays over a two year period, the precipitous timing of change of plea immediately after jury selection, and his knowledge of the Commonwealth's announced future critical witness unavailability and difficulties. The conditional basis and timing of the filing of [his] withdraw of his pro se Motion to Withdraw also influenced the Court. [Vorrado] withdrew his previous pro se Motion only after he had been granted extra time to gain mitigating credit for confidential cooperation.

Trial Court Opinion, 10/14/2015, at 12.

Conversely, Vorrado emphasizes the timeliness of his "clear assertions of innocence," which he first made in his *pro se* motion filed "slightly over a month following his guilty plea," and later repeated in his counseled motion. **See** Vorrado's Brief at 23. Moreover, unlike the conditional withdrawal in **Tennison**, or the "last-minute, bald assertion of innocence" offered in **Carrasquillo**, Vorrado claims he "made colorable demonstrations as to the reasoning behind his articulation of innocence," both in his *pro se* and

_(Footnote Continued)_ ————————

holding **Lesko** "is incompletely reasoned on the relevant point and should not remain controlling authority." **Hvizda**, **supra**, 116 A.3d at 1105.

counseled petitions to withdraw the plea. *Id.* at 19, 20. He explains he was coerced to plead guilty by his former attorney, he did not review the elements of the crimes before entering his plea, and he identified a new, previously unavailable exonerating witness.[9] *Id.*

We conclude, however, that under the unique circumstances presented in this case, the trial court did not abuse its discretion in denying Vorrado's motion to withdraw his plea. A review of the record reveals Vorrado entered his plea only after (1) the jury had been selected, (2) his motion to preclude the admission of his intercepted prison phone calls was denied, and (3) the Commonwealth had arranged to transport eyewitness Salvatore DeMarco to court on a stretcher. *See* N.T., 9/11/2014, at 18-19; Order, 2/10/2014. Although he first proclaimed his innocence in a *pro se* motion filed just over a month later, he **knowingly** and **voluntarily** withdrew that motion less than a month later in order to proceed to sentencing. *See* N.T., 4/11/2014, at 9.[10] At that time, the court bifurcated the sentencing hearing, upon Vorrado's motion, so that his newly retained counsel could have more time

---

[9] Although counsel stated at the motion to withdraw hearing that the alleged witness was "outside the courtroom," he did not call the witness to testify. N.T., 9/11/2014, at 9. Further, while counsel indicated he provided the Commonwealth with a copy of the witness's statement to his investigator, no such statement is included in the certified record. *See id.*

[10] Indeed, at that time, counsel stated: "I would ask for bifurcation of the sentencing as you are just allowing me to enter for me to do further investigation **to prepare adequately for my client for the sentencing**." N.T., 4/11/3014, at 8 (emphasis supplied).

to prepare, and present evidence of his purported cooperation with law enforcement. However, the court took the testimony of first responder Officer Brown, because the officer was scheduled to be deployed out of the country a few days later. *See Id.* at 12-16. It was only **after** Officer Brown was deployed that Vorrado's attorney filed a second motion to withdraw his plea one week before the scheduled sentencing hearing. As the trial court opined:

> After Officer Brown was deployed, [Vorrado] pounced upon the opportunity to prevent the Commonwealth's ability to prosecute him and filed a new and improved Motion to Withdraw his Guilty Plea. In short, examination of the record reveals his calculated scheme to avoid responsibility for his heinous actions.

Trial Court Opinion, 10/14/2015, at 13.

In addition to the gamesmanship Vorrado displayed – by (1) filing a *pro se* motion to withdraw after a jury was selected, (b) withdrawing the motion after securing new counsel and attempting to get sentencing credit for his cooperation with authorities, and (3) refiling the motion after a crucial witness became unavailable – the trial court was also presented with Vorrado's intercepted prison phone calls which revealed his attempt to "orchestrate Ms. Wasko's nonappearance at his preliminary hearings and trial listings with induced narcotics abuse."[11] *Id.* at 8. Considering all of the

---

[11] *See* Philadelphia Prison Phone Calls of Vorrado, dated 8/15/2012 (telling "Female D" to "[h]ave a nice party" with Wasko the night before the second preliminary hearing); 8/16/2012 (telling "Female D" she is "going to have one more rough night [doing drugs with Wasko] on the 27th," the night
*(Footnote Continued Next Page)*

above circumstances, we find the court acted well within its discretion when it determined Vorrado's assertion of innocence was not "plausible." *Carrasquillo*, *supra*, 115 A.3d at 1292. Like in *Carrasquillo*, Vorrado's intercepted prison phone calls, as well as the dubious timing of the filing of his motions to withdraw, "wholly undermined" the plausibility of his professions of innocence. *Id.* at 1293. Although Vorrado insists his protestations of innocence were corroborated by his "explanations for his assertions"[12] – *i.e.*, counsel forced him to plead guilty, he did not review the elements of the crimes, and he found a new witness – none of these explanations constitute a "colorable demonstration" that permitting withdrawal of his plea "would promote fairness and justice." *Carrasquillo*, *supra*, 115 A.3d at 1292.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

before the third preliminary hearing listing), 8/20/2012 (telling "Female D" to take Wasko "to a hotel [or] Atlantic City" so she will not appear for the third listing); 8/26/2012 (telling "Bobby" and "Female D" to get Wasko out of her house before the third listing), 10/30/2012 (stating to "Female D" that "when stuff like this happens in a drug house, you get robbed, you beat somebody up, you don't call the cops! They should have took it on the chin. They robbed me."), 12/6/2012 (stating to "Female D," "[t]ell Anthony [presumably one of Vorrado's friends] he said he wanted to do something for me right … [t]ell him, that he knows the phone box is in that yard. Right? You understand? Like, the night before [trial] – you follow me?"); 12/7/2012 (stating "Somebody's gotta take that phone out [at Wasko's house] like … two nights before [trial].").

[12] Vorrado's Brief at 29.

Furthermore, while we agree Vorrado's motion should be adjudged under the pre-sentence standard, we emphasize that here, Vorrado proclaimed his innocence only **after** his sentencing hearing had begun, the Commonwealth presented the testimony of its "impeccable"[13] fact witness, Officer Brown, and Officer Brown subsequently became unavailable. Relying on the most recent pronouncements of the Supreme Court in **Carrasquillo** and **Hvizda**, we find no abuse of discretion on the part of the trial court in concluding Vorrado failed to provide a fair and just reason for the withdrawal of his guilty plea. Because Vorrado did not demonstrate this prerequisite, we need not consider whether the withdrawal of his plea would substantially prejudice the Commonwealth. **See Carrasquillo**, **supra**, 115 A.3d at 1293 n.9. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2016

---

[13] N.T., 9/11/2014, at 36 (trial court describing testimony of Officer Brown, noting his absence would be "an extreme loss").