J-S44025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW DAVID HITES | : | |
| | : | |
| Appellant | : | No. 201 WDA 2019 |

Appeal from the Judgment of Sentence Entered January 8, 2019
In the Court of Common Pleas of Venango County Criminal Division at
No(s): CP-61-CR-0000142-2018

BEFORE: SHOGAN, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 26, 2019**

Andrew David Hites appeals from the judgment of sentence entered following his plea of guilty[1] to persons not to possess a firearm and recklessly endangering another person.[2] Hites argues the trial court erred in denying his motion to withdraw his guilty plea. We affirm.

According to the affidavit of probable cause, Hites sent a video to his ex-girlfriend on February 16, 2018, via text message. The video was recorded by Hites, and showed Hites shooting a gun at a ceramic baseball trophy inside

---

[1] Although the transcript reflects that Hites entered a plea of *nolo contendere* rather than guilty, Hites has not challenged the court's entry of a guilty plea. Moreover, the difference had no bearing on our review of Hites' motion to withdraw his plea. *See* Pa.R.Crim.P. 591 (providing same standard for withdrawal of plea of guilty or *nolo contendere*), 590 comment (stating a court accepting a plea of guilty or *nolo contendere* must elicit, inter alia, whether the defendant understands the nature of the charges and the factual basis for the plea).

[2] 18 Pa.C.S.A. §§ 6105(a)(1) and 2705, respectively.

his bedroom in his mother's residence. The police arrested Hites, who agreed to a recorded interview. In the interview, Hites "related in essence that he sent a video to [his ex-girlfriend] around 10:00 to 10:30 pm yesterday (02/16/18) and claimed he sent the video within about 20 minutes of making it." Affidavit of Probable Cause, 2/17/18, at 5. "When asked what he was wearing when he made the video, he stated the 'same thing I have on now.' Hites also related during the interview that his mother . . . was present in the residence when the video was made." *Id.* The affidavit alleged that Hites' criminal history included a conviction for a second-degree felony. *Id.*

At Hites' preliminary arraignment in September 2018, his attorney requested that the court permit Hites to enter a plea of "no contest." N.T., Guilty Plea, 9/24/18, at 23.[3] On the record, Hites agreed that there would be a reasonable likelihood that a jury could find him guilty if the Commonwealth presented evidence that "an individual received a text message in the form of a video that showed [Hites] lifting a firearm and firing it in a residence"; Hites' "mother was in the residence somewhere . . . on that date and time when the . . . message was sent"; and Hites had previously been convicted of a second-degree felony. *Id.* at 30-31. The court instructed Hites that to prove him guilty, the Commonwealth would have to present evidence that Hites had previously been convicted of a second-degree felony, and possessed a firearm at his mother's residence on February 16 and 17, 2018. The court also advised

---

[3] *See also* N.T., Guilty Plea, 9/24/18, at 30 (Commonwealth attorney acknowledging "no contest" plea).

him that the Commonwealth "would have to . . . show the date, time, and place [Hites] discharged the firearm inside of the residence in which there was another person present[.]" *Id.* at 31-32. When asked whether he understood the elements of the crimes to which he was pleading guilty, Hites responded, "Yes." *Id.* at 32. The court scheduled sentencing for December 10, 2018.[4]

Four days before sentencing was set to occur, Hites filed a motion to withdraw his guilty plea. In the motion, Hites asserted "that he was not aware of the nature of certain discovery critical to his alleged offenses, and that his pleas were not, therefore, intelligently and voluntarily tendered." Motion to Withdraw Guilty Plea, 12/6/15, at 1 ¶ 6.

The court held a hearing on the motion. Hites testified that he asked to withdraw his plea because he had recently seen, for the first time, the video giving rise to the charges. According to Hites, when the police interviewed him, they did not show him the subject video, and Hites believed they were questioning him about a different video. N.T., 12/14/18, at 7-8. Hites testified he had thought the police were asking him about a video he had sent on Valentine's Day, which he had fabricated on his smartphone.[5] *Id.* at 11, 26.

---

[4] In exchange for Hites' plea, the Commonwealth agreed to recommend at sentencing that the court sentence Hites to concurrent sentences, with an aggregate minimum sentence of 30 months' incarceration, and to waive any objection to Hites' eligibility for the Recidivism Risk Reduction Incentive Program.

[5] Hites described the video as "a cartoon that you make up in your phone with the Smartphone applications," and as a "fiction. It's not a factual thing. It was

- 3 -

Hites did not describe the content of the alleged fabricated video. Hites denied sending a video other than the one he had fabricated. *Id.* at 12. Hites' attorney clarified that it was now Hites' "position that that's not him in the [subject] video." *Id.* at 23. Hites' attorney stated that the delay between the entry of Hites' guilty plea and his motion to withdraw was due to the time the attorney needed to acquire and transmit the electronic discovery materials to Hites. *Id.* at 19.

Hites also asserted that because he had been unable to view the subject video prior to the entry of his guilty plea, due to jail policies regarding electronic discovery, he had believed he was pleading guilty based on the contents of the fabricated video. *Id.* at 7-8. Hites asserted that he had not protested the charge for possession of a firearm at the guilty plea hearing because a firearm had been present in his residence, and he had admitted to the firearm's whereabouts during a subsequent interview with the police. *Id.* at 9. However, Hites claimed that after he saw the video giving rise to the charges, it "g[ave] different meaning to what the charges are that I had figured out in my mind with possession, because it was in the house. I was like, --- okay. And, then after I had seen the video, when they physically put it in my hand, and . . . allegedly fired the weapon, that is absolutely not what

_____

like movie clips. . . . There's different apps on the phone where you can take little pieces of a movie clip, add a little piece from this other spot with like words and emoji's and whatnot." N.T., 12/14/18, at 11, 26.

happened in that. I did not plead to that." *Id.* at 12-13.[6] Hites also argued that he had not learned the legal definition of "possession" until accessing the prison law library. *Id.* at 27. Hites agreed that he had pled guilty to "endangering somebody by discharging a firearm." *Id.* at 10. However, Hites simultaneously protested, "that wasn't the facts," and "finding out what the evidence really was[,] was two different things." *Id.* at 10-11, 13.

The Commonwealth argued that there was no way Hites had been confused about the contents of the video during either his interview with the police or his guilty plea. The Commonwealth stated that the subject video was filmed in first-person, and Hites had admitted during the police interview that he was wearing the same clothing as he had been wearing in the video giving rise to the charges, which would not have made sense if Hites had believed they were discussing a fabricated video. *Id.* at 20-22, 23-24.[7] According to

_____

[6] Hites also stated, "The factual basis of me pleading to Possession of a Firearm was the fact that, yes, it was an item that was in the home I was staying at. Possession after I had seen the video is [an] altogether different scenario than what I was considering." N.T., 12/14/18, at 9.

[7] Although the Commonwealth argued that Hites had admitted to wearing the same clothing as he had been wearing "in" the video giving rise to the charges, the affidavit of probable cause states Hites admitted to wearing the same clothing during the video as he was wearing when he had "made" the video the previous day. In other words, the affidavit of probable cause does not state that Hites admitted to being "in" a video. However, at the withdraw hearing, the Commonwealth argued, "The video . . . shows somebody in the first person wearing . . . the exact same clothes that [Hites] was wearing when they actually interviewed him. He admitted that --- that he was wearing the same clothes in that video as he was wearing in the interview." N.T., 12/14/18, at 23. By arguing that Hites had admitted to wearing the same

the Commonwealth, Hites had also first protested during the police interview that the firearm in the video had been "photo-shopped," and that he did not know whether there were any firearms in the house, but shortly afterward told the police where in the house the gun was located, which contradicts his claim that he believed they were discussing a separate, wholly-fabricated video. *Id.* at 20-21.[8] The Commonwealth also proffered that the police had confirmed Hites' bedroom was the same room as was shown in the subject video, that a shell casing was found in the area where the video showed the gun being discharged, and that Hites had told the officers in a subsequent interview where in the house the gun was located. *Id.* at 24.

The court denied the motion. The court "did not find that [Hites] ha[d] given a [colorable] claim of innocence and, in fact, ha[d] provided testimony to support his claim to withdraw his guilty plea[] which is contradictory to what he testified to under oath during the Guilty Plea Colloquy." Order, 12/14/18, at 1. In its Rule 1925(a) opinion, the court further explained that Hites could not contradict the admissions he made during the guilty plea—that he discharged a firearm in a residence when another person was present. Trial Court Opinion, filed April 5, 2019, at 7-8. The court also found Hites had not

_____

clothing as he had been wearing "in" the video, or the same clothing that the subject of the video had been wearing when filming it, the Commonwealth may have been referencing other statements Hites made during the police interview, a copy of which is not in the certified record.

[8] The Commonwealth argued that Hites had claimed he "photo-shopped [the video] to put different pieces together to make the gun." N.T., 12/14/18, at 21.

asserted his innocence either during the police interview or at the withdrawal hearing. Hites had only complained that he had not seen the video before being questioned by the police, and the court concluded that Hites now wanted to test that evidence at trial. *Id.* at 6. Finally, the court found that Hites' claim that his confession was a misunderstanding was not colorable, stating it was "unreasonable and unlikely [Hites] believed the police were referring to a fictional video he made on his phone when interviewing him for firing a gun in the house." *Id.* The court noted that Hites told the police that he was wearing the same clothing during the interview as when he made the video, and told the police the location of the firearm. *Id.*

The court thereafter sentenced Hites to an aggregate of 30 to 84 months' incarceration, and Hites appealed.

Hites presents the following issues:

1. Whether the lower court erred in denying [Hites]' request to withdraw [his] guilty plea after finding that an admission to criminal conduct at his guilty plea colloquy barred withdrawal of his guilty plea, notwithstanding [Hites] supplied more than a bare assertion of innocence to justify his request to withdraw?

2. Whether the lower court erred in determining that [Hites] did not supply a fair and just reason to withdraw his guilty plea, pre-sentence, based upon the testimony developed on the record, where he indicated, *inter alia*, that he was not aware of certain discovery materials and, therefore, did not enter a knowing, intelligent, and voluntary guilty plea?

Hites' Br. at 4 (answers below omitted).

A trial court may grant or deny a pre-sentence motion to withdraw a guilty plea at its discretion, and we will not disturb its decision absent an abuse

of that discretion. **Commonwealth v. Johnson-Daniels**, 167 A.3d 17, 23 (Pa.Super. 2017).

Hites argues that he asserted at the withdrawal hearing that he is innocent and never possessed or discharged the firearm. Hites further argues that his claim of innocence was consistent with his interview with the police, where he denied he had physically possessed the firearm, and told the police that a video of him holding a firearm must have been "photo-shopped." Hites asserts that in addition to his colorable claim of innocence, the court should have granted his motion because he had materially misapprehended the nature of the Commonwealth's key piece of evidence at the time he entered his plea.

A trial court faced with a pre-sentence request to withdraw a guilty plea must decide "whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." **Commonwealth v. Norton**, 201 A.3d 112, 116 (Pa. 2019) (quoting **Commonwealth v. Carrasquillo**, 115 A.3d 1284, 1292 (Pa. 2015)). The trial court is to exercise its discretion "liberally in favor of the accused," and "any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." **Id.** (quoting **Carrasquillo**, 115 A.3d at 1292).

However, the "policy of liberality . . . has its limits, consistent with the affordance of a degree of discretion to the common pleas courts." **Id.** (quoting

*Carrasquillo*, 115 A.3d at 1292). It is within the purview of the trial court to assess the plausibility of a claim of innocence, as "trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their pleas would promote fairness and justice." *Id.* at 121. The trial court must consider the totality of the circumstances at the time of the withdrawal request, including "the statements made by the defendant in association with his declaration of innocence, and the plausibility of the defendant's statements in light of the evidentiary proffer made by the Commonwealth at the plea hearing." *Johnson-Daniels*, 167 A.3d at 24.[9]

---

[9] *Compare Commonwealth v. Islas*, 156 A.3d 1185, 1192 (Pa.Super. 2017) (finding defendant's claim of innocence was plausible where defendant had previously protested his innocence to law enforcement and testified at withdrawal hearing that he had not committed the charged conduct, the victim had a motive to fabricate the charges, and the defendant just learned of his available defenses, such as calling character witnesses) *with Commonwealth v. Hvizda*, 116 A.3d 1103 (Pa. 2015) (finding defendant's assertion of innocence implausible and rebutted by prosecution's proffer of taped conversations in which defendant admitted guilt), *Commonwealth v. Williams*, 198 A.3d 1181, 1186 (Pa.Super. 2018) (declaring defendant's claim of innocence not plausible where defendant claimed at withdrawal hearing that he had lied under oath during guilty plea colloquy, and Commonwealth proffered evidence that defendant's DNA was found in the rape kit), *Commonwealth v. Davis*, 191 A.3d 883, 890-91 (Pa.Super. 2018) (finding defendant's claim of innocence unsupported and rebutted by the evidence presented by the Commonwealth), *appeal denied*, 200 A.3d 2 (Pa. 2019), *and Commonwealth v. Baez*, 169 A.3d 35, 40 (Pa.Super. 2017) (concluding defendant's bald claim of innocence was unsubstantiated by any defense to the charges).

Here, at the withdrawal hearing, Hites claimed he was innocent. He claimed he had not created or sent the subject video, which showed someone holding and firing a gun, and argued that he was only "guilty" of knowing there was a weapon in his residence and of sending a fabricated video to his ex-girlfriend (the contents of which were not explained). However, we conclude the court did not abuse its discretion in denying the motion, as Hites' claim of innocence, based solely on his allegation of confusion during the police interview, was implausible, as was his allegation of confusion during the guilty plea hearing.

At the withdrawal hearing, Hites suggested he had not known at the time of the interview or plea that the video giving rise to the charges showed him holding and firing a weapon. However, (1) during his plea hearing, Hites acknowledged that the Commonwealth proffered to introduce a video that showed Hites holding and firing a gun inside his residence, and prove that he did fire the gun inside the residence, and (2) at the withdrawal hearing, the Commonwealth proffered evidence that the video was filmed in Hites' bedroom, that they found shell casings there, and that the subject of the video was wearing the same clothing as Hites' had been wearing during his police interview. These factors contradict Hites' claim that he is not the subject of the video that shows someone shooting a firearm while wearing his clothing

and inside his bedroom, or that he had not understood he was pleading guilty on the basis of the existence of such a video.[10]

Moreover, Hites did not offer before the court a copy of the alleged fabricated video to support his withdraw request, or explain how its contents were so similar to the subject video that Hites could have confused the two. More importantly, Hites made no attempt to explain the origin of the subject video that he has now had an opportunity to view, and did not deny that it showed someone wearing his clothing and firing a gun inside his bedroom, or assert any other valid defenses. The court therefore did not abuse its discretion in finding that it was unreasonable to believe the statements Hites made at the withdrawal hearing, and concluding that Hites failed to present a colorable claim of innocence.

To the extent that Hites argues the court should have granted his motion based on his inability to view the video prior to pleading guilty, we fail to see how this amounts to a fair and just reason to withdraw the guilty plea, rather than a belated desire to contest the authenticity of the video or the legal conclusions it supports. Given the weakness of Hites' arguments that he did not understand the contents of the video when pleading guilty, and the lack

---

[10] In addition, at the withdrawal hearing, Hites stated he believed the police were questioning him about a fabricated video he sent on Valentine's Day, and that he was pleading guilty to sending that video. However, during his interview with the police, Hites admitted he made and sent the video for which he was being questioned to his ex-girlfriend between 10:00 and 10:30 p.m. on February 16, 2017, not on Valentine's Day.

of any assertion that the evidence against Hites does not correspond to the factual basis of the plea, we hold the trial court did not abuse its discretion in finding that withdrawal in this case would not promote fairness and justice.[11]

Hites also argues that the court erred in concluding he could not withdraw his guilty plea on the basis that he had admitted guilt at the plea hearing. Hites posits "a defendant's participation in a guilty plea may not be used to negate his later assertion of innocence when seeking to withdraw." Hites' Br. at 13 (quoting **Islas**, 156 A.3d at 1191). Hites claims the court found his participation in the guilty plea colloquy dispositive of his withdraw request.

A defendant who has pled guilty is not precluded from later seeking to withdraw a plea based on a claim of innocence. **Islas**, 156 A.3d at 1191. "[S]uch an incongruity will necessarily be present in all cases where an assertion of innocence is the basis for withdrawing a guilty plea." **Id.** (quoting **Commonwealth v. Katonka**, 33 A.3d 44, 49 (Pa.Super. 2011) (*en banc*), *abrogation on other grounds as recognized by* **Islas**, 156 A.3d at 1188). At the same time, a defendant may not directly contradict statements he has made under oath at the time of the guilty plea, such as that he is entering

---

[11] Because we conclude the trial court did not abuse its discretion in finding no fair and just reason to allow Hites to withdraw his plea, we need not assess whether the prosecution would have been substantially prejudiced by withdrawal.

into the plea voluntarily. ***See, e.g., Commonwealth v. Pier***, 182 A.3d 476, 480 (Pa.Super. 2018).

Here, it is not that Hites admitted to committing the acts forming the factual basis for the plea which precludes him from asserting his innocence.[12] Rather, it is Hites' affirmative acknowledgment at the plea hearing that he knew and understood the factual basis for the plea, the nature of the evidence proffered by the Commonwealth, and the elements of the crimes charged, which were outlined by both the Commonwealth and the trial court, which belie his current outlandish claim that he had not understood to what facts and elements he was pleading guilty. The court therefore did not abuse its discretion in considering the record of the plea hearing when deciding the validity of Hites' claim that he had misunderstood the nature of the evidence against him until after he had pled guilty, and denying the motion.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019

---

[12] In fact, Hites did not admit he committed the criminal acts during his guilty plea, or even that the subject video existed, but only acknowledged he understood what facts the Commonwealth had offered to prove at trial.