**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 7 EAP 2014 |
| | : |
| Appellant | : Appeal from the judgment of the Superior |
| | : Court at No. 1045 EDA 2011, Dated |
| | : October 8, 2013, Vacating the Judgment |
| v. | : of Sentence of the Philadelphia County |
| | : Court of Common Pleas, Criminal Division, |
| | : at Nos. CP-51-CR-0009652-2009 and CP- |
| JOSE A. CARRASQUILLO, | : 51-CR-0009653-2009, Dated November |
| | : 30, 2010, and Remanding |
| Appellee | : |
| | : 78 A.3d 1120 (Pa. Super. 2013) |
| | : |
| | : ARGUED:  September 10, 2014 |


***OPINION***


**MR. CHIEF JUSTICE SAYLOR**[1]          **DECIDED:  June 15, 2015**


In this appeal, we consider the criteria governing the disposition of a presentence motion to withdraw a guilty plea.  Our decision turns on the conclusion that a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request.

On the morning of June 1, 2009, two girls were sexually assaulted by the same man.  The first victim, sixteen-year-old C.J., escaped after offensive touching.  Eleven-year-old N.O., however, was threatened and lured into an alleyway, where she was brutally raped and sustained severe injuries requiring hospitalization and surgery.

---

[1] This matter was reassigned to this author.

Police investigated and arrested Appellee, Jose A. Carrasquillo, who made inculpatory statements during interrogation. Charges were lodged in two separate criminal proceedings, which were later consolidated for trial. After a psychiatric evaluation confirmed that Appellee was competent to be tried, he decided to enter open guilty pleas to various sexual offenses, including rape, as well as other crimes.

At the plea colloquy, the Commonwealth proffered that the evidence against Appellee included his own statements, identification testimony from both victims, video surveillance recordings apparently showing Appellee with or in the vicinity of each victim close in time to the assaults, and DNA and fingerprint evidence linking Appellee to the rape of N.O. *See* N.T., Aug. 11, 2010, at 32-45.

The plea court advised Appellee of his pertinent constitutional rights and the implications of waiver. After further explaining that Appellee faced possible sentences of life and nine years' imprisonment, respectively, in the cases relating to N.O. and C.J., the court accepted the pleas and entered verdicts. Appellee was also informed that he could seek to withdraw his guilty plea at any time before sentencing and that the court "would have to consider whether or not the reasons for you doing so are fair and necessary, fair and appropriate, compared to the prejudice that that might cause to the Commonwealth's case and to their witnesses, and particularly in this case to child witnesses." *Id.* at 63. *See generally Commonwealth v. Forbes*, 450 Pa. 185, 190, 299 A.2d 268, 271 (1973).

Three and one-half months later, the court conducted a sentencing hearing. The prosecutor read into evidence a report prepared for the Sexual Offenders Assessment Board, which described Appellee's multiple sexually violent episodes and concluded that Appellee was a sexually violent predator for the purposes of Megan's Law. *See* 42 Pa.C.S. §§9794(c), 9795.4(b) (superseded). The report portrayed Appellee as a cruel

assailant, who "was sexually aroused by acts of violence, domination, or threats upon the victims" and for whom self-reported rage and anger were secondary motivators. N.T., Nov. 30, 2010, at 49-66. In addition, N.O., her parents, grandmother, teacher, and physician testified to the severe physical and emotional trauma that N.O. had suffered. Among other things, the witnesses stated that memories of the brutal attack continued to affect N.O.'s emotional and psychological well-being. *See id.* at 73-75, 86-88. In mitigation, Appellee offered expert testimony describing neuropsychological impairment affecting his behavior, and a letter from his paternal aunt requesting leniency. *See id.* at 90-122.

After the defense rested, Appellee explained in allocution that he had pled guilty to spare N.O. suffering, and he therefore expressed surprise at his portrayal during the sentencing hearing. Appellee also stated that he had entered his plea because, absent a polygraph examination, his account would not have been believed and he would not have received a fair trial. He continued to discuss scenarios unrelated to the sexual assault of N.O., in which the CIA purportedly had victimized him by seeking to employ him as an assassin abroad, and where a serpent assertedly appeared and "[t]he Antichrist, he came out of me[.]" *See id.* at 123. Claiming that he did not commit the assault against N.O. and had been framed, Appellee insisted that a polygraph test would prove his innocence and asked to withdraw his guilty plea. *See id.* at 122-24.

The prosecutor responded that permitting Appellee to withdraw his guilty plea would prejudice the Commonwealth, because N.O. had a sense of closure knowing that she did not have to testify; forcing her to testify and "re-open old wounds . . . would be extremely prejudicial to her well-being." *Id.* at 129.

The sentencing court denied the motion to withdraw. Once again, Appellee requested an investigation and a polygraph, saying "[i]f not, you go ahead and give me

life." *Id.* at 133. Sentencing proceeded, and Appellee received an aggregate term of incarceration of 30 to 66 years.

Upon Appellee's appeal, the sentencing court issued an opinion setting forth its rationale. *See Commonwealth v. Carrasquillo*, Nos. CP-51-CR-0009652-2009 & CP-51-CR-0009653-2009, *slip op.* at 9 (C.P. Phila. Dec. 29, 2011). Initially, the court reiterated that the grant or denial of a motion to withdraw is discretionary in the trial court at any time before sentence imposition and that defendants have no absolute right to the requested relief. *See id.* (citing Pa.R.Crim.P. 591(A)); *see also Forbes*, 450 Pa. at 190, 299 A.2d at 271; *accord Commonwealth v. Randolph*, 553 Pa. 224, 228-29, 718 A.2d 1242, 1244 (1998). The court recognized, however, the directive of this Court that such discretion should be exercised liberally in defendants' favor. *See Forbes*, 450 Pa. at 190, 299 A.2d at 271; *accord Commonwealth v. Santos*, 450 Pa. 492, 494-95, 301 A.2d 829, 830 (1973) ("The trial courts in exercising their discretion must recognize that 'before judgment, the court should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial -- perhaps the most devastating waiver possible under our Constitution.'" (quoting, indirectly, *Dukes v. Warden, Conn. State Prison*, 406 U.S. 250, 258, 92 S. Ct. 1551, 1555 (1972) (Stewart, J., concurring))).

Such principles, the court noted, were distilled by this Court in *Forbes* into the governing requirement that a presentence motion to withdraw a guilty plea should be granted if supported by a fair and just reason and substantial prejudice will not inure to the Commonwealth. *See Forbes*, 450 Pa. at 190-91, 299 A.2d at 271 (referencing various federal authorities and secondary materials). Nevertheless, in the sentencing court's view, denial is appropriate where the reasons offered by a defendant are belied

by the record. *See Carrasquillo*, Nos. CP-51-CR-0009652-2009, *et al.*, *slip op.* at 9 (citing, *inter alia*, *Commonwealth v. Tennison*, 969 A.2d 572, 578 (Pa. Super. 2009)).

As applied to the present circumstances, the sentencing court reasoned that Appellee's claim of innocence -- premised in part on an explanation that he had been framed in an elaborate scheme orchestrated by the Central Intelligence Agency and conditioned upon a polygraph test -- was implausible, insincere, and "nothing more than an attempt to manipulate the justice system" by introducing a belated competency-based defense. *Id.* at 10. The court stressed that Appellee asserted his innocence nearly four months after entering his guilty plea and only minutes before sentencing, timing which also diminished his credibility. In the sentencing court's view, rather than a good-faith advancement of innocence, Appellee's "allocution was a guilty, shamed reaction to harsh testimony at the sentencing hearing, in which he heard himself described as a 'monster,' 'pedophile,' and 'rapist' by the victim and her family as they recounted the suffering and anguish he inflicted upon them." *Id.* at 11. Finally, the court found that the Commonwealth would be substantially prejudiced, because withdrawal of the plea would place "the Commonwealth in the dilemma of reopening the wounds of a healing child or withdrawing its prosecution." *Id.* at 13 (footnote and citation omitted).

On appeal, a divided *en banc* panel of the Superior Court reversed, holding that the trial court abused its discretion in denying Appellee's request to withdraw his guilty plea. *See Commonwealth v. Carrasquillo*, 78 A.3d 1120, 1131 (Pa. Super. 2013).[2] In terms of the the fair-and-just criterion deriving from *Forbes*, the Superior Court majority acknowledged that Appellee had made "fantastical and outlandish claims during his sentencing hearing." *Id.* at 1126. The majority nonetheless found Appellee's claim of

---

[2] *En banc* consideration by the intermediate appellate court occurred on reargument, after a three-judge panel initially had reversed in a memorandum decision.

innocence to be controlling, stating that "our law does not (contrary to the Commonwealth's suggestion) require some quantum of 'rational support' as a prerequisite for a plea withdrawal." *Id.* Along these lines, the majority indicated:

> We find no basis in precedent to authorize trial courts to import a rationality test or to examine the clarity or articulateness of movants' words in these circumstances. We are unprepared to bar an otherwise lawful motion because the language used includes not only a clear assertion of innocence, but also outlandish verbiage and extraneous references.

*Id.* at 1127 (footnote omitted).

The majority next refused to consider the strength of the Commonwealth's evidence against Appellee, as it found this to have no bearing on the dispositive innocence claim. *See id.* at 1127-28 (quoting *Commonwealth v. Katonka*, 33 A.3d 44, 49-50 (Pa. Super. 2011) (*en banc*)). Instead, the majority reinforced that "[w]e have made it clear that, in assessing a defendant's presentence petition to withdraw a guilty plea, trial courts are 'not permitted to make a determination regarding the sincerity of [defendants'] unambiguous claims of innocence.'" *Id.* at 1128 (quoting *Commonwealth v. Unangst*, 71 A.3d 1017, 1022 (Pa. Super. 2013)). Accordingly, in the majority's view, an unambiguous assertion of innocence -- regardless of its rationality, clarity, sincerity, or plausibility -- was sufficient to warrant withdrawal.

In terms of the finding that Appellee had an ulterior motive in that he was attempting to manipulate the process, the Superior Court majority found no supportive evidence. *See id.* On this point, the majority quoted from *Unangst* in its rejection of a similar contention:

> [A]ny time a defendant moves to withdraw a guilty plea prior to sentencing, he could be accused of engaging in a dilatory tactic to avoid sentencing. Thus, if we were to permit this type of reasoning to defeat a presentence motion to

> withdraw, we would be ignoring the clear pronouncements
> from our Supreme Court in *Forbes* and *Randolph*.

*Id.* (quoting *Unangst*, 71 A.3d at 1022); *accord id.* (positing that the Commonwealth had offered no evidence that Appellee "asserted his innocence as a pretext, or as a ploy to game the system").

The majority also held that the trial court had abused its discretion in finding that withdrawal of the plea would result in substantial prejudice to the Commonwealth. Quoting *Commonwealth v. Gordy*, 73 A.3d 620 (Pa. Super. 2013), it explained that "prejudice is about the Commonwealth's ability to try its case, not about the personal inconvenience to complainants unless that inconvenience somehow impairs the Commonwealth's prosecution." *Carrasquillo*, 78 A.3d at 1129 (quoting *Gordy*, 73 A.3d at 624 (citation omitted)); *cf. Commonwealth v. Kirsch*, 930 A.2d 1282, 1286 (Pa. Super. 2007) ("[P]rejudice cannot be equated with the Commonwealth being made to do something it was already obligated to do prior to the entry of the plea."). Thus, according to the majority, the Commonwealth's interest in shielding N.O. from testifying was insufficient as a matter of law to establish prejudice, because withdrawal meant only that the Commonwealth would have to try the case and present N.O. as a witness, which it was already obliged to do before the plea. *See Carrasquillo*, 78 A.3d at 1129.

Judge Gantman concurred in the result without opinion, while Judge Mundy, joined by then-President Judge Bender and Judge Panella, dissented. The dissent reasoned that the majority accorded too much weight to Appellee's innocence claim; instead, the dissent posited that the entire exchange cast a different light on the assertion. In this respect, the dissenting judges viewed Appellee's claim as conditional, given that various of Appellee's statements suggested that it was meant to be dependent on the affordance of a polygraph examination. The dissent would have held that such a conditional invocation was not a fair and just reason to support withdrawal of

the guilty plea. *See id.* at 1132-36 (Mundy, J., dissenting, joined by Bender, P.J. and Panella, J.).[3]

The Commonwealth petitioned for allowance of appeal. We accepted review, *inter alia*, to clarify whether the common pleas courts must accept a bare assertion of innocence as a fair and just reason for withdrawal. *See Commonwealth v. Carrasquillo*, 624 Pa. 503, 86 A.3d 830 (2014) (*per curiam*).

Presently, the Commonwealth criticizes the Superior Court's holding as being fundamentally inconsistent with the discretion invested in sentencing courts. *See* Brief for Appellant at 12 ("The Superior Court's inflexible rule treats a plea of guilty as a meaningless formality, revocable at the defendant's whim upon utterance of magic words, and employable by him to manipulate or frustrate the justice system."); *accord United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975) ("Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively become an automatic right."); *State v. Smullen*, 571 A.2d 1305, 1309 (N.J. 1990) ("Liberality in exercising discretion does not mean an abdication of all discretion." (quoting *State v. Huntley*, 322 A.2d 177, 179 (N.J. Super. 1974)). In the Commonwealth's view, the courts of common pleas should be afforded latitude to evaluate the sincerity and plausibility of the justification for withdrawing a guilty plea offered by an accused. *See, e.g.*, Brief for Appellant at 21 ("A court exercising discretion must necessarily be entitled to decide whether a purported profession of innocence is legitimate, or it is instead an empty demonstration made in an effort to create delay or disrupt the prosecution."). The Commonwealth believes that such an

---

[3] The dissenting judges did not recognize that the passage of the discussion between Appellee and the sentencing court which they regarded as "the most telling" of Appellee's intentions ensued after the court had rendered its ruling denying withdrawal. *See* N.T., Nov. 30, 2010, at 132-33.

approach reconciles with *Forbes*, in that liberality should extend to plausible claims of innocence, which would not be lightly discredited. *See id.* at 22. It is the Commonwealth's position that the inflexible rule reflected in the Superior Court's decisions "degrade[s] the otherwise serious act of pleading guilty[.]" *Id.* at 18, 22 (quoting *United States v. Hyde*, 520 U.S. 670, 677, 117 S. Ct. 1630, 1634 (1997)).

The Commonwealth traces what it views as a perversion of the *Forbes* standard to an *en banc* decision of the Superior Court in *Commonwealth v. Cole*, 387 Pa. Super. 328, 564 A.2d 203 (1989). *See id.* at 333-34, 564 A.2d at 205 (stating that "where a defendant has asserted innocence . . . it has been held to be an abuse of discretion for a trial court to deny a pre-sentence petition for withdrawal of a guilty plea.").[4] The Commonwealth highlights, however, that concerns with a blanket approach were registered at that time of *Cole*'s issuance and going forward. *See id.* at 338, 564 A.2d at 207-08 (McEwen, J., concurring) (suggesting that "[t]he admonition of *Forbes* [and its progeny] that a presentence request to withdraw a guilty plea be 'construed liberally' in favor of the accused, is not a direction to blithely ignore the obvious, or to heedlessly abandon reason"); *id.* at 339, 564 A.2d at 208 (Kelly, J., concurring) (cautioning that treating a claim of innocence as a *per se* basis for withdrawal would require that "a disingenuous incantation . . . by judicial alchemy would become magic words with which to evade the legitimate requirement of 'just cause' for withdrawal"). The Commonwealth complains that subsequent decisions of the intermediate court have followed the lead of the *Cole* majority to erroneously equate the mere assertion of innocence with a fair-and-just reason under *Forbes*. *See* Brief for Appellant at 19 (citing *Commonwealth v. Rish*,

---

[4] Earlier decisions of the intermediate court also are reflective of a bright-line approach. *See, e.g.*, *Commonwealth v. Boofer*, 248 Pa. Super. 431, 433, 375 A.2d 173, 174 (1977) ("An assertion of innocence is a 'fair and just reason' for permitting withdrawal of a guilty plea." (citation omitted)).

414 Pa. Super. 220, 224, 606 A.2d 946, 947 (1992), and *Commonwealth v. Iseley*, 419 Pa. Super. 364, 374, 615 A.2d 408, 413 (1992)). Although the Commonwealth references a few cases as taking a contrary view,[5] it observes that the *per se* approach became entrenched in and after the recent decision of an *en banc* panel in *Katonka*, 33 A.3d at 50 & n.2. This, the Commonwealth asserts, is manifestly contrary to the weight of authority in other jurisdictions and warrants correction.[6]

Appellee, in his brief, embraces the *per se* approach to innocence claims, arguing that it derives specifically from *Forbes*, and has been implemented by this Court in *Commonwealth v. Woods*, 452 Pa. 546, 550-51, 307 A.2d 880, 881-82 (1973), and in a strong admonishment of the Superior Court's departures in *Randolph*, 553 Pa. at 230, 718 A.2d at 1244-55 (criticizing the intermediate court's refusal to give weight to an innocence assertion as a "cavalier disregard of the *Forbes* standard"). Appellee

---

[5] *See Brief for Appellant* at 19 n.5 (citing *Tennison*, 969 A.2d at 575 (indicating that "a fair and just reason has to be a credible reason"), and *Commonwealth v. Miller*, 432 Pa. Super. 619, 628-29, 639 A.2d 815, 819 (1994) (upholding a common pleas court's refusal to permit withdrawal of a plea, in part, because the defendant's "alleged assertion of innocence rings hollow")).

[6] The following decisions exemplify the proposition that a mere, bare, or non-colorable assertion of innocence is insufficient, in and of itself, to support withdrawal of a plea: *United States v. Buholtz*, 562 Fed. Appx. 213, 214 (5th Cir. 2014); *United States v. Shumaker*, 475 Fed. Appx. 817, 821 (3d Cir. 2012) (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)); *United States v. Gonzalez*, 647 F.3d 41, 53 (2d Cir. 2011); *United States v. Reid*, 387 Fed. Appx. 392, 394 (4th Cir. 2010); *United States v. Goodson*, 569 F.3d 379, 383 (8th Cir. 2009); *United States v. Wolf*, 44 Fed. Appx. 16, 19 (7th Cir. 2002); *Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996); *Barker*, 514 F.2d at 221; *State v. Munroe*, 45 A.3d 348, 356 (N.J. 2012); *White v. United States*, 863 A.2d 839, 842 (D.C. 2004). *See generally* Thomas P. Reilly, Note, *Now I'm Guilty, Now I'm Not: The Automatic Right to Pre-Sentence Guilty Plea Withdrawals in Pennsylvania Since Commonwealth v. Forbes*, 59 VILL. L. REV. 305, 320-30 & nn. 85-138 (2014) (collecting cases) (offering a comparison between Pennsylvania cases governing presentence plea withdrawal with those of other jurisdictions).

stresses that the intermediate court took heed of *Randolph* by effectuating the *per se* approach to innocence claims in a series of ensuing decisions. *See* Brief for Appellee at 14 (citing *Gordy*, 73 A.3d at 629, *Unangst*, 71 A.3d at 1021, *Commonwealth v. Pardo*, 35 A.3d 1223, 1230 (Pa. Super. 2011), *Katonka*, 33 A.3d at 50 & n.2, *Kirsch*, 930 A.2d at 1285-86, *Commonwealth v. Goodenow*, 741 A.2d 783, 787 (Pa. Super. 1999), *Commonwealth v. Hutchins*, 453 Pa. Super. 209, 212-13, 683 A.2d 674, 676 (1996), *Rish*, 414 Pa. Super. at 224, 606 A.2d at 947, and *Cole*, 387 Pa. Super. at 333-34, 564 A.2d at 205). While Appellee recognizes the bright-line nature of this approach, he emphasizes that relief is not "automatic," since the common pleas court may still consider prejudice to the Commonwealth. *See, e.g.*, *Katona*, 33 A.3d at 50 (remanding for such a prejudice assessment).

According to Appellee, requiring the accused to offer evidence of the sincerity or plausibility of his assertion contravenes the liberality required by *Forbes* and unfairly shifts the burden of proof from the prosecution onto the defendant, thereby impairing the defendant's constitutional rights to a fair trial and to counsel. Along these lines, Appellee suggests that allowance for credibility judgments will yield inconsistent results, particularly since "intent to delay or manipulate the prosecution can be alleged in every single instance of a defendant moving to withdraw his guilty plea." Brief for Appellee at 10; *accord Unangst*, 71 A.3d at 1022 ("[I]f we were to permit this type of reasoning to defeat a presentence motion to withdraw, we would be ignoring the clear pronouncements from our Supreme Court in *Forbes* and *Randolph*.").[7] Although the clear weight of the federal authority is against him, *see supra* note 6, Appellee asserts

---

[7] In any event, Appellee cites the Superior Court's *Tennison* decision as creating an exception that allows an innocence assertion to be discredited, but only where the record plainly demonstrates an ulterior motive (and not where such motive must be inferred). *See* Brief for Appellee at 22 (citing *Tennison*, 969 A.2d at 578).

that we should not follow the lead of the federal courts, since the Federal Rules of Criminal Procedure establish a different system for when and how pleas may be withdrawn, encompassing allowance of withdrawal for "any reason or no reason" prior to acceptance of the plea. *See* Brief for Appellee at 20 n.6 ("A more strict interpretation of the 'fair and just' standard makes more sense under the federal rules because of the additional procedural protection afforded to withdrawal of pleas prior to their being accepted." (citing Fed.R.Crim.P. 11(d))).

Appellee also posits that there are practical concerns attending movement away from a bright-line approach:

> [I]t raises questions as to what sort of evidence would be admissible in support of the motion (offer of proof, documentation, testimonial), what standard would be used to weigh the evidence (prima facie, preponderance of the evidence, beyond a reasonable doubt), and how would courts handle cases involving alternative defenses (self-defense, diminished capacity, insanity). The hearing on the motion to withdraw would become a mini-trial and would open the door to vast amounts of new appellate litigation.

*Id.* at 28. Appellee cautions against "blur[ring] the line" between pre- and post-sentence withdrawal standards. *Id.* at 28.

The issues posed, involving the application of the *Forbes* standard, are questions of law. Accordingly, our review of the Superior Court's decision is plenary. *See Commonwealth v. Batts*, 620 Pa. 115, 127, 66 A.3d 286, 293 (2013).

As amply reflected above, this Court's *Forbes* decision reflects that: there is no absolute right to withdraw a guilty plea;[8] trial courts have discretion in determining

---

[8] A guilty plea implicates the waiver of important constitutional rights attending a defendant's trial rights. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69 (1970) (explaining that a "plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered (continued…)

whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth. *See Forbes*, 450 Pa. at 190-91, 299 A.2d at 271. The perfunctory fashion in which these principles were applied to the circumstances presented in *Forbes*, as well as in the ensuing decision in *Woods*, 452 Pa. at 546, 307 A.2d at 880, also lent the impression that this Court had required acceptance of a bare assertion of innocence as a fair-and-just reason. *See, e.g.*, *Forbes*, 450 Pa. at 192, 299 A.2d at 272 ("Obviously, [the] appellant, by [his] assertion of innocence – so early in the proceedings[, *i.e.*, one month after the initial tender of a plea,] – offered a 'fair and just' reason for withdrawal of the plea.").

Both *Forbes* and *Woods,* however, are distinguishable on their facts, particularly in terms of the timing of the innocence claim. In *Forbes*, the Court noted that the claim was made about one month after the plea tender. *See id.* In *Woods*, albeit that the innocence declaration was made over a year after the plea was accepted, this Court highlighted its occurrence nine months before sentencing. *See Woods*, 452 Pa. at 550-51, 307 A.2d at 882. Nevertheless, in light of the *Randolph* Court's forceful emphasis upon such an innocence declaration, and its concomitant rejection of the common pleas and intermediate courts' reliance on the defendant's previous concessions to guilt, *see Randolph*, 553 Pa. at 230-31, 718 A.2d at 1244-45, we cannot criticize the intermediate court for its understanding that credibility judgments relative to innocence were foreclosed. *See, e.g.*, *Katonka*, 33 A.3d at 49 (citing *Randolph* for the proposition that

(…continued)
without a trial -- a waiver of his right to trial before a jury or a judge"); *Commonwealth v. Culbreath*, 439 Pa. 21, 26, 264 A.2d 643, 645 (1970) (observing that, by pleading guilty, a defendant waives non-jurisdictional defects and defenses).

this Court had condemned credibility determinations as to a defendant's innocence in the plea withdrawal context). In other words, we acknowledge the legitimate perception of a *per se* rule arising from this Court's decisions.

As with other such bright-line rules, however, the principle is subject to the axiom that the holding of a decision is to be determined according to the facts under consideration, *see, e.g.*, *Oliver v. City of Pittsburgh*, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011), and continuing evaluation as experience with new fact patterns offers further insight into the wisdom of a *per se* approach. Indeed, we recently observed, that, "for better or for worse, the experience with broadly stated prophylactic rules often has been that they cannot be sustained on their original terms." *Commonwealth v. Henderson*, 616 Pa. 277, 287, 47 A.3d 797, 803 (2012).

Presently, we are persuaded by the approach of other jurisdictions which require that a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. *See supra* note 6 (citing cases). More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

This case, in our view, illustrates why the existing *per se* approach to innocence claims is unsatisfactory. Here, Appellee's assertion was first made in sentencing allocution, after the close of the evidentiary record (which, in any event, was dedicated to a different purpose, since no motion to withdraw had been advanced before or during such record's development). No request was made to reopen the record for an orderly presentation in support of Appellee's request. Moreover, the bizarre statements made

by Appellee in association with his declaration of innocence wholly undermined its plausibility, particular in light of the Commonwealth's strong evidentiary proffer at the plea hearing. In the circumstances, the common pleas court should not have been required to forego sentencing; rather, we find that it acted within its discretion to refuse the attempted withdrawal of the plea.[9]

The order of the Superior Court is reversed, and the matter is remanded for reinstatement of the judgment of sentence. Jurisdiction is relinquished.

Former Chief Justice Castille and former Justice McCaffery did not participate in the decision of this case.

Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Stevens files a concurring opinion in which Mr. Justice Baer joins.

---

[9] In light of our disposition, above, we do not reach the second issue presented on appeal, which concerns prejudice to the Commonwealth. *See Carrasquillo*, 624 Pa. at 503, 86 A.3d at 830.