**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NATHANIEL GASKIN-JONES | : | |
| | : | |
| Appellant | : | No. 622 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 11, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001151-2019

BEFORE:  OLSON, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 22, 2022**

Appellant, Nathaniel Gaskin-Jones, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his open guilty plea to third-degree murder, burglary, and other offenses.  We affirm.

The relevant facts and procedural history of this case are as follows.  On February 26, 2019, the Commonwealth charged Appellant with the following offenses: murder, conspiracy to commit murder, burglary, violations of the Uniform Firearms Act, and possession of an instrument of crime.[1]  On October 15, 2020, Appellant entered an open guilty plea to third degree murder, burglary, conspiracy to commit burglary, and a violation of the Uniform

---

[1] **See** 18 Pa.C.S.A. §§ 2502, 903(c), 3502(a)(1)(i), 6106(a)(1), 6108, and 907(a), respectively.

Firearms Act. The Commonwealth *nolle prossed* the remaining charges.

During the guilty plea hearing, the trial court conducted an extensive plea colloquy. The court explained the elements of the offenses of which Appellant had been charged, and the potential sentences associated with those offenses. (**See** N.T. Plea Hearing, 10/15/20, at 9-18). The Commonwealth discussed the evidence that it could introduce, including surveillance video and eye-witness testimony that Appellant entered the victim's house, Appellant's statement identifying himself on the video entering the victim's house, and a statement from a co-conspirator identifying Appellant as the shooter. (**See id.** at 20-23, 44-45). The court explained the process that occurs when a defendant enters a guilty plea that is open as to sentencing. (**Id.** at 24-29).

Defense counsel stated that, prior to the hearing, Appellant had not indicated whether he intended to plead guilty and asked for a new lawyer. (**Id.** at 34). The court stated that Appellant had the right to appointed counsel, but not to appointment of the attorney of his choice. (**Id.** at 38-39). The court then determined that, based on counsel's performance on the case thus far, it did not see any reason to remove counsel. (**Id.** at 42). The court recessed to give Appellant additional time to speak with his attorney and to review the written guilty plea colloquy.

After reconvening, the court reviewed the written plea colloquy that Appellant had signed. (**Id.** at 49-50; Written Guilty Plea Colloquy, 10/15/20).

The court engaged in another extensive colloquy to ensure Appellant understood his rights and was entering a knowing, intelligent, and voluntary plea. (**See** N.T Plea Hearing at 50-55).

Appellant admitted to the following recitation of the facts:

> On August 7th of 2018, [the decedent] was inside his home at 2093 Anchor Street. At approximately 6:05 p.m., [Appellant], along with two other men, were walking on Anchor Street towards [the decedent's] home. [Appellant] approached the porch, ascended the steps to the front door, and entered without knocking. But after a brief pause at the door, all three men entered the house.
>
> A few moments after they entered, neighbors outside heard multiple gunshots from the house. During the shooting, the two males who accompanied [Appellant] ran from the house and then . . . more shots were heard. And then after the shooting was completed, [Appellant] was observed running from the house.
>
> As [Appellant] left the house, he could be seen placing something inside of a black bag that he has on his arm or on his shoulder.
>
> The decedent was found inside the home naked on the second floor. He was shot six times in the head, neck and torso. An eyewitness, who knows [Appellant], saw him go into the house and run out after the shooting stopped. [Appellant's] phone was confiscated during his arrest and pictures of him posing with the handgun were found inside that phone. The handgun matched the FCCs recovered from the scene, which were .45-caliber.
>
> \*   \*   \*
>
> . . . [I]n a statement given to police, [Appellant] identified himself in this video as the person leading the other two into the house before the murder, and as the person leaving after the murder.
>
> [Appellant] used to be a tenant of the decedent. He rented a room in the basement. Prior to this, [Appellant] and the decedent had accused each other of stealing clothes, and

- 3 -

the decedent had evicted [Appellant].

(*Id.* at 56-58).

Appellant explained that he went to the decedent's residence with two other individuals, including Appellant's cousin Shahid Young who had been to the residence before, to help move Appellant's belongings out of the house. Appellant claimed that it was Shahid Young's idea to commit the burglary. (*Id.* at 59).  Appellant also stated that while he was committing the burglary, there was an altercation between the decedent and himself after the decedent caught him.  Appellant admitted that, during that altercation, he was the one who took the gun out and fired.  (*Id.* at 60).  In response to the court's questions, Appellant explained that he intended to retrieve some clothing and a game system that he had left behind when he was evicted the week prior. (*Id.* at 61-64).  He also planned on taking the decedent's television.  (*Id.* at 65-66).  The court then accepted Appellant's guilty plea to the above-mentioned crimes.  (*Id.* at 70).

On February 11, 2021, at the start of Appellant's sentencing hearing, defense counsel stated that Appellant told her that morning that he wanted to withdraw his guilty plea and proceed to trial.  (*See* N.T. Sentencing Hearing, 2/11/21, at 15-16).  The trial court recessed to review the notes of testimony of the guilty plea hearing.  The court then reviewed on the record the facts admitted to during the plea colloquy as well as discussions between Appellant and the court.  (*See id.* at 16-26).  The court concluded that "[g]iven the extensive colloquy" and the fact that Appellant was under oath and bound by

his answers, "permitting [Appellant] to withdraw [his] plea . . . would not promote fairness and justice." (*Id.* at 26). Accordingly, the court denied Appellant's request to withdraw his plea. It then sentenced him to an aggregate term of seventeen (17) to thirty-four (34) years of incarceration. (*Id.* at 72).

On February 12, 2021, Appellant filed a post-sentence motion to withdraw his guilty plea; he filed an amended motion on February 15, 2021, adding a sentencing claim. The trial court denied the motions on February 17, 2021. On February 22, 2021, the court issued a supplemental order denying the post-sentence motions and granting trial counsel's motion to withdraw.

On March 18, 2021, Appellant timely filed a *pro se* notice of appeal. On March 23, 2021, the court appointed appellate counsel, and, on March 26, 2021, it ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied with the court's order.

On appeal, Appellant raises the following issue:

> Did the trial court err by failing to adequately [colloquy] [Appellant] on his [third-]degree murder plea and then subsequently disallow him to withdraw it?

(Appellant's Brief at 7).

Appellant claims that the trial court erred when it denied his pre-sentence request to withdraw his guilty plea because the plea was not knowing, intelligent, and voluntary. Appellant contends that "the terms of his guilty plea were ambiguous, unclear, and have been the source of great

- 5 -

confusion." (*Id.* at 13) (internal quotation marks and citations omitted). Appellant asserts that he did not know the elements of third-degree murder when he pled guilty to that crime. Appellant concludes his guilty plea to third-degree murder was unknowing, unintelligent, and involuntary, and this Court must vacate and remand for further proceedings. We disagree.

As a general rule, the entry of a guilty plea constitutes a waiver of all defects and defenses except lack of jurisdiction, invalidity of the plea, and legality of the sentence. *See Commonwealth v. Main*, 6 A.3d 1026 (Pa.Super. 2010). This Court reviews the denial of a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Gordy*, 73 A.3d 620 (Pa.Super. 2013). *See also* Pa.R.Crim.P. 591(A) (stating: "At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty").

"[T]he proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Commonwealth v. Carrasquillo*, 631 Pa. 692, 706, 115 A.3d 1284, 1292 (2015).

> In the seminal case of *Commonwealth v. Forbes*, 299 A.2d 268 (Pa. 1973), the Supreme Court set forth the standard for determining when a motion to withdraw a guilty plea prior to sentencing should be granted. The Court stated that "[a]lthough there is no absolute right to

withdraw a guilty plea, properly received by the trial court, it is clear that a request made before sentencing . . . should be liberally allowed." 299 A.2d at 271. The Court then outlined the now well-established two[-]prong test for determining when to grant a pre-sentence motion to withdraw a plea: (1) the defendant has provided a "fair and just reason" for withdrawal of his plea; and (2) the Commonwealth will not be "substantially prejudiced in bringing the case to trial." *Id.*

***Commonwealth v. Muhammad***, 794 A.2d 378, 382-83 (Pa.Super. 2002).

Where a withdrawal request is based on an allegation that the plea colloquy was inadequate, we look to Rule of Criminal Procedure 590, which states that when considering a plea agreement: "The judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of *nolo contendere* is based." Pa.R.Crim.P. 590(B)(2). The comment to Rule 590 sets forth the following information that the judge must ascertain in determining whether to accept a plea:

(1)     Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2)     Is there a factual basis for the plea?

(3)     Does the defendant understand that he or she has the right to trial by jury?

(4)     Does the defendant understand that he or she is presumed innocent until found guilty?

(5)     Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6)     Is the defendant aware that the judge is not bound

by the terms of any plea agreement tendered unless the judge accepts such agreement?

(7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if the defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590 (Comment).

This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. **See Muhammad, supra**. A guilty plea will be deemed valid if an examination of the totality of the circumstances surrounding the plea shows that the defendant had a full understanding of the nature and consequences of his plea such that he knowingly and intelligently entered the plea of his own accord. **See Commonwealth v. Rush**, 909 A.2d 805, 808 (Pa.Super. 2006). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing and the defendant bears the burden of proving otherwise. **See Commonwealth v. Pollard**, 832 A.2d 517, 522-23 (Pa.Super. 2003).

Instantly, on October 15, 2020, Appellant executed a written guilty plea colloquy communicating his decision to plead guilty. In the written colloquy, Appellant acknowledged that he understood the elements of the charges and the maximum penalties associated with each crime, the sentencing ranges and fines associated with each charge, his right to a jury trial, the presumption of his innocence, that the trial court was not bound by his agreement, and that by entering a plea of guilty he had very limited appellate rights. (**See**

Written Guilty Plea Colloquy, 10/15/20).

Appellant also engaged in an extensive oral guilty plea colloquy with the court. (*See* N.T. Plea Hearing at 7-56). In its opinion, the trial court explained that during the oral colloquy,

> [Appellant] confirmed that he could read, write, and understand English, that he was not taking any medication, or was suffering from any medical issues that would interfere with his ability to understand the nature of the charges against him and of the procedure itself. [The trial c]ourt summarized the elements of each of the offenses for which [Appellant] was charged, the Commonwealth's associated burden of proof, and the maximum sentence associated with each. After [Appellant] confirmed his understanding, [the trial c]ourt reviewed the permissible range of sentences with [Appellant], the nature of his plea, and his right to proceed by bench or jury trial. After discussing issues related to a co-defendant's recent arrest, [Appellant] informed this court that he was not made any promises in exchange for his plea, he had not been threatened or coerced, that the decision to plead guilty was his and his alone, that he was abandoning his right to a jury trial and that his decision would be final. [The trial c]ourt further summarized his limited appellate rights, and informed [Appellant] that if he felt that his attorney was ineffective, he could raise that issue in a Post-Conviction Relief Act ("PCRA") petition. Then after hearing the Commonwealth's recitation of the facts in this case, [Appellant pled] guilty to each of the above offenses.

(Trial Court Opinion, filed 4/15/21, at 4-5) (record citations omitted).

The record here shows that prior to sentencing, the trial court considered Appellant's motion to withdraw his guilty plea. After reviewing the written and oral colloquies, the court concluded that Appellant failed to demonstrate that withdrawal of the plea would promote fairness and justice. (*See* N.T. Sentencing Hearing at 26, 63). It also found that Appellant had

failed to demonstrate a colorable claim of his innocence and that his claim was not supported by the record. (**See id.** at 63). Accordingly, the trial court denied Appellant's pre-sentence motion to withdraw his plea.

The record supports the trial court's decision to deny Appellant's motion to withdraw his plea. Under the totality of these circumstances, Appellant entered a knowing, voluntary, and intelligent guilty plea. **See Rush, supra**; **Muhammad, supra**. Appellant has not met his burden of proving that "permitting withdrawal of the plea would promote fairness and justice." **See Carrasquillo, supra**. Therefore, we conclude that the court did not abuse its discretion when it denied Appellant's motion seeking to withdraw his guilty plea. **See Gordy, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2022