J-A28041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY WILLIAM GARY | : | |
| | : | |
| Appellant | : | No. 2634 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 13, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0007529-2017

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED OCTOBER 05, 2023**

Rodney William Gary ("Gary") appeals from the judgment of sentence imposed after he pleaded *nolo contendere* to persons not to possess a firearm and firearms not to be carried without a license.[1]  We affirm.

We summarize the factual and procedural history of this appeal from the record.[2]  In July 2017, the Upper Darby Police Department received numerous

---

[1] **See** 18 Pa.C.S.A. §§ 6105, 6106.

[2] We note with disapproval that the trial court failed to provide a full summary of the facts or make relevant findings of fact or credibility related to the issues raised on in this appeal.  **See** Trial Court Opinion, 5/21/22, at 3-4 (unnumbered).  We further note Gary's brief does not address the trial court opinion and instead asks this Court to make critical findings of fact and credibility.  **See** Gary's Brief at 15, 17-19; **but see BouSamra v. Excela Health**, 210 A.3d 967, 979-80 (Pa. 2019) (noting "it is not an appellate court's function to engage in fact finding") (internal citation omitted); **In re A.J.R.-H.**, 188 A.3d 1157, 1176 (Pa. 2018) (noting that an appellate court may not affirm a decision on a different basis when the court must weigh evidence and engage in fact finding or make credibility determination to reach a legal
*(Footnote Continued Next Page)*

reports of gunshots at the 7000 block of Guilford Road. *See* Affidavit of Probable Cause, 7/30/17, at 1. Responding police officers found four 9-mm fired cartridge casings in the area, and a witness reported that she saw a Black man in his early twenties running from the scene. *See id*. The witness stated that the man had short-cropped hair, was wearing a white shirt and black Adidas running pants, and was carrying a black sweatshirt. *See id*. The witness did not specifically identify the suspect as Gary.

An hour later, the same witness told an investigating detective that the man who fired the gunshots had just entered a green Toyota Corolla ("the Corolla") and gave the detective the car's license plate number and approximate location. *See id*.[3] The detective broadcasted the information over police radio. Another officer saw the Corolla, observed a Black man in the backseat, and followed the Corolla until more officers arrived to conduct what the affidavit of probable cause referred to as a "felony vehicle stop." *Id*. Once officers stopped the Corolla and had its occupants exit, they

---

outcome); *but see Commonwealth v. Tighe*, 224 A.3d 1268, 1279 (Pa. 2020) (plurality). Because we do not have the benefit of relevant findings of fact or credibility from the trial court, we will review the record in a light most favorable to Gary to determine whether his legal claims have merit.

[3] Gary alleges the witness who initially described the shooter to police also reported that the shooter got into the Corolla. *See* Gary's Brief at 10. He asserts that the report about the shooter entering a car occurred one hour after the witness initially described the shooter. *See id*. Gary cites to a suppression hearing transcript for these propositions but failed to ensure that the certified record contains those transcripts. For the reasons stated above, we accept these assertions as true.

identified the driver as Maya Smith ("Smith"), the front passenger as Laquita Priester ("Priester"), and the backseat passenger as Gary. *See id*.; *see also* Exhibits DW-2, Priester's Statement & DW-3, Smith's Statement. Officers observed a black shirt on the backseat of the Corolla, where Gary had been seated, and a handgun underneath the front seat. *See* Affidavit of Probable Cause, 7/30/17, at 1. Officers towed the Corolla to police headquarters, obtained a search warrant, and recovered the handgun from the Corolla. *See id*. at 1-2. The handgun was determined to be a 9-mm loaded with thirteen rounds and an additional round in the chamber. *See id*. at 2.

Officers also took Priester and Smith from the scene of the stop to police headquarters. Both Priester and Smith gave statements that same evening. Priester gave two, conflicting statements to police: an initial and a supplemental statement. The substance of Priester's initial statement was as follows: she was at a home with Smith and Gary earlier in the day.[4] *See* Exhibit DW-2, Priester's Statement, 7/29/17, at 1. Gary had a black handgun on the table, and after using Priester's phone, put the pistol into his waistband, and left the home. *See id*. at 5. Twenty to thirty minutes after Gary left, she and Smith left to pick up Gary's brother. *See id*. at 2. Along the way, they saw Gary standing outside of a store, and he asked them to give him a ride back to the home. *See id*. Gary got in the backseat of the Corolla behind Priester, and he directed Smith to drive around the block. *See id*. He then

---

[4] Priester stated she was dating Gary's brother. *See* Exhibit DW-2, Priester's Statement, 7/29/17, at 1.

told Smith to use a turn signal because there was a police car behind them. *See id*. at 3. The officer signaled for them to stop shortly after Smith made a turn. *See id*. at 3. As Smith pulled over, Gary bent down to slide something underneath Priester's seat. *See id*. Gary told Smith that she did not have to let the police search the car. *See id*. at 4. Priester denied possessing or hiding the handgun underneath her seat. *See id*. at 6.

In her supplemental statement to police, Priester added when she, Smith, and Gary were at the home earlier in the day, a female stopped by the home and a friend of Gary's was also present. Gary and his friend talked about somebody wanting to fight. *See id*. at 7. Gary and his friend then left the home. *See id*. Contrary to Priester's initial statement, which indicated she and Smith left the home after Gary left, her supplemental statement asserted that Gary left, then returned to the home, and afterward, she, Smith, and Gary left together to go "buy weed." *Id*.

Smith's statement to police included details not contained in Priester's statements. Smith indicated she and Priester went shopping before returning to the home to watch TV. *See* Exhibit DW-3, Smith's Statement, 7/19/17, at 1. A female, and then Gary and his friend, arrived at the home. *See id*. Gary and his friend left, then returned to the home. *See id*. Smith added when Gary returned, he was talking excitedly about the person who wanted to fight. *See id*. Gary removed a magazine from a handgun, put the magazine on the table, and then got a second magazine from the couch and put it in the pistol. *See id*. Although Smith stated that she, Priester, and

Gary then left the home together, Smith asserted Gary asked them for a ride to a barbershop, but the shop was closed. *See id*. They then went to a store, after which Gary asked her and Priester to go "get weed." *Id*. at 1-2. They were unable to purchase the marijuana and began driving to the home, when an officer stopped them. *See id*. at 2.[5]

Upper Darby police filed the criminal complaint and accompanying affidavit of probable cause charging Gary with persons not to possess a firearm and firearms not to be carried without a license.[6] Gary retained private counsel ("plea counsel"), who filed a motion to suppress the handgun found in the Corolla as the fruit of an illegal search. The trial court denied the suppression motion following two days of hearings. The trial court scheduled trial in the instant case for October 29, 2019. *See* Order, 4/2/19.

_____

[5] Smith, like Priester, stated when a police car began following them, Gary told her to use her turn signals. *See* Exhibit DW-3, Smith's Statement, 7/19/17, at 2. When the officer stopped them, Gary was leaning down behind the front passenger seat, and he told Smith that the police did not have a right to search her car. *See id*.

[6] While initially on bail in the present case, Gary allegedly committed new offenses listed at trial docket 1201 of 2018 ("the separate case"). We address Gary's appeal concerning the separate case at J-A28042-22.

Moreover, after Gary committed the new offenses in the separate case, the trial court revoked Gary's initial bail in the instant case and set a new bail amount of 10% of $100,000. Gary signed verifications on two *pro se* motions to modify the new bail amount. Both of those forms contained a preprinted assertion that "[d]efendant denies charges against him and will plead not guilty at trial." *See Pro Se* Motions to Reduce Bail, filed 7/24/18 and 9/11/18. The trial court denied both requests to reduce the bail amount.

On the scheduled trial date, Gary appeared in court with plea counsel and pleaded *nolo contendere* to persons not to possess a firearm and firearms not to be carried without a license in the instant case.[7] The court accepted Gary's *nolo contendere* pleas and scheduled sentencing for December 2019.

Thereafter, the trial court granted plea counsel's numerous requests to continue sentencing or status hearings until February, April, and then December 2020, and then again until January and March 2021.[8] In March 2021, plea counsel filed a motion to withdraw from representation averring Gary wanted new counsel due to disagreements with plea counsel's representation and strategy. *See* Motion to Withdraw as Counsel, 3/5/21, at 1. The court granted plea counsel's motion to withdraw and appointed present counsel in March 2021.

_____

[7] Gary also pleaded *nolo contendere* in the separate case. Plea counsel represented Gary in both cases at the hearing.

While conducting an on-the-record colloquy, plea counsel discussed the possibility of proceeding to trial, noted that the Commonwealth informed him that it "had a number of witnesses available to come to [c]ourt to testify in the case," and confirmed Gary's understanding that by entering his plea, he was "relieving the [Commonwealth] of [its] duty and [its] job of having to call witnesses to [c]ourt to prove [its] case." N.T., 10/29/19, at 9-10.

[8] We note the COVID-19 pandemic likely delayed the scheduling of a sentencing hearing. However, most of the defense's continuance request forms did not state the reasons for the requests. Two used general terms such as "negotiations" or "open matters." Applications for Continuances, dated 2/7/20 and 1/29/21. We add that the Commonwealth filed to a third case against Gary listed at 1511 of 2021, which involved a murder charge. *See* N.T., 6/22/21, at 19.

- 6 -

In May 2021, nearly **nineteen months** after entering his *nolo contendere* pleas, present counsel filed a motion to withdraw Gary's pleas. The motion asserted that Gary had maintained his innocence throughout the case. *See* Motion to Withdraw *Nolo Contendere* Pleas, 5/27/21, at 3 (unnumbered).

The trial court held a hearing on Gary's motion to withdraw his *nolo contendere* pleas. Present counsel argued that the instant case against Gary "turn[ed] on" testimony from Priester and Smith, but their statements to police did not "make sense" and contained "serious credibility issues." N.T., 6/22/21, at 6-7. Present counsel claimed that Priester's initial statement to police that she and Smith left after Gary left the home could suggest that Priester and Smith took part in the reported shooting. *See id*. at 6. Present counsel claimed that without credible testimony that Gary placed the handgun under the front seat of the Corolla from either Priester or Smith, the Commonwealth could not prevail at trial. *See id*. at 7. Gary did not testify at the hearing, but present counsel alleged that Gary maintained his innocence when seeking bail reductions before entering his pleas. *See id*. at 8-9.

The Commonwealth responded that Gary's assertion of innocence was implausible. The Commonwealth argued that Priester and Smith both stated Gary possessed the firearm and placed it underneath the front seat of the Corolla, and that officers recovered the handgun from underneath the seat directly in front of Gary. *See id*. at 17. The Commonwealth also noted the lengthy delay in Gary's assertion of his innocence and suggested that Gary

might have ulterior motives due to a third case against him involving a charge of murder. *See id*. at 18-19.[9] The Commonwealth cited *Commonwealth v. Carelli*, 454 A.2d 1020 (Pa. Super. 1982), for the proposition that it would suffer substantial prejudice if the court granted Gary's request to withdraw his *nolo contendere* pleas after the Commonwealth prepared for trial, subpoenaed witness for the original trial date, and was ready to proceed with trial on the day Gary entered his *nolo contendere* pleas. *Id*. at 21. However, the Commonwealth's argument centered on three witnesses in the *separate* case and a possible hardship for one of those witnesses. *See id*. at 19-22. The Commonwealth did not assert that the near nineteen-month delay between Gary's *nolo contendere* pleas and his motion to withdraw his pleas would impair the Commonwealth's ability to try the instant case. *See id*.

The trial court denied Gary's motion to withdraw his plea without explanation and proceeded to a sentencing hearing on August 13, 2021. The trial court ordered Gary to serve an aggregate term of thirty-six to seventy-two months of imprisonment in this case.[10] Gary filed a post-sentence motion again requesting the withdrawal of his *nolo contendere* pleas, which the trial

---

[9] The Commonwealth also stated that when entering his pleas, Gary acknowledged that the Commonwealth would be prejudiced by a subsequent attempt to withdraw that plea. *See* N.T., 6/22/21, at 19-21; *see also* Commonwealth's Brief at 23.

[10] The trial court sentenced Gary in the separate case on the same day.

court denied. Gary timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Gary raises the following issue for our review:

Whether the [trial court] erred as a matter of law and abused its discretion, in denying [Gary's] motion to withdraw his *nolo contendere* plea, filed well prior to sentencing, where a manifest injustice would result in denial of the motion, in that [Gary] maintained his innocence prior to trial and advanced a colorable, plausible claim of innocence by showing that Commonwealth witnesses against him rendered conflicting, self[-]serving statements to police?

Gary's Brief at 4 (some capitalization omitted).

The following principles govern our review of the denial of a motion to withdraw a plea. There is no absolute right to withdraw a guilty plea or a plea of *nolo contendere*. **See Commonwealth v. Carrasquillo**, 115 A.3d 1284, 1291 (Pa. 2015); **see also Commonwealth v. Norton**, 201 A.3d 112, 114 & n.1 (Pa. 2019) (noting that the same standards apply to motions to withdraw a guilty plea and a *nolo contendere* plea). The level of scrutiny when reviewing a motion to withdraw a plea depends on the timing of the defendant's request. **See Commonwealth v. Broaden**, 980 A.2d 124, 128-29 (Pa. Super. 2009). A **post-sentence motion** requires a showing of manifest injustice. **See id**. at 129. A decision regarding whether to accept a defendant's **pre-sentence** motion to withdraw a plea is left to the sound discretion of the sentencing court. **See id**. at 128; **see also** Pa.R.Crim.P. 591(A).

A trial court must construe a pre-sentence motion to withdraw a plea "liberally in favor of the accused" and "any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." *Carrasquillo*, 115 A.3d at 1292 (internal citation omitted). The trial court may exercise its discretion when considering whether an assertion of innocence constitutes a fair and just reason for a pre-sentence withdrawal of a plea. *See Norton*, 201 A.3d at 120. A defendant's bare assertion of innocence will not establish a fair and just reason to withdraw a plea *per se*. *See id*. The trial court may consider the credibility or plausibility of a defendant's assertion of innocence when assessing whether the defendant has offered a colorable claim that the withdrawal of the plea would promote fairness and justice. *See id*. at 120-21. However, given the liberal application of the fair-and-just standard, a trial court cannot reject an assertion of innocence based solely on the fact that the defendant knowingly, intelligently, and voluntarily entered a guilty or *nolo contendere* plea. *See Commonwealth v. Islas*, 156 A.3d 1185, 1191 (Pa. Super. 2017).

An appellate court reviews the trial court's decision for an abuse of discretion. Thus,

> [w]hen a trial court comes to a conclusion through the exercise of its discretion, there is a heavy burden on the appellant to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary

- 10 -

power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, an appellate court should not disturb a trial court's ruling.

*Norton,* 201 A.3d at 120 (internal citations, quotations, and brackets omitted).

At the outset, we note the trial court reasoned, incorrectly, that Gary knowingly, voluntarily, and intelligently pleaded *nolo contendere* and as a result did not state a fair and just reason to withdraw his pleas. **See** Trial Court Opinion, 5/21/22, at 3-4 (unnumbered) (applying **Carelli**).[11] The trial court's consideration of the fair-and-just standard without finding facts or credibility as to Gary's assertion of innocence constituted an abuse of discretion. **See Islas**, 156 A.3d at 1191.

On appeal, Gary offers no argument that the trial court's specific reasoning was in error. Instead, Gary argues his assertion of innocence constituted fair and just reason to withdraw his *nolo contendere* pleas and the Commonwealth failed establish substantial prejudice. Although the trial court's reasoning concerning its rejection of Gary's assertion of innocence was

---

[11] The trial court reliance on **Carelli** was misplaced. In that case, the defendants asserted their pleas were invalid for numerous reasons, but they did not assert their innocence. **See Carelli**, 454 A.2d at 1024-26 & n.14 (Pa. Super. 1982). Thus, **Carelli** is not instructive on the question of whether a defendant's assertion of innocence constitutes a basis to withdraw a plea before sentencing.

erroneous, we discern no merit to Gary's legal argument that his assertion of innocence stated a fair and just reason to withdraw his pleas.

Gary contends that his assertion of innocence was at least colorable based on the credibility issues in Priester's and Smith's statements and likens the present case to *Islas*, wherein this Court reversed the trial court's decision that Islas failed to state a fair and just reason to withdraw a plea before sentencing. Gary contends *Islas* instructs that a defense based upon the lack of credibility of witnesses supports a fair and just reason to withdraw pleas before sentencing.

Gary's argument that *Islas* controls the outcome of this appeal lacks merit. The differences between the circumstances discussed in *Islas* and the present case are manifest. Islas consistently maintained his innocence in a police interview and in testimony on his motion to withdraw his plea. *See Islas*, 156 A.3d at 1191. Gary denied guilt and only asserted his innocence through present counsel. Additionally, in *Islas*, the Commonwealth's case hinged on the credibility of a single complainant, and Islas asserted that his plea counsel had not advised him of all possible defense strategies. *See id*. Here, Gary acknowledged that his proffered defense required that two witnesses, Priester and Smith, either not testify at trial or be found incredible, and he did not assert he was unaware of their statements to police or possible defenses.

The timing of the motions to withdraw guilty pleas was also substantially different in the two cases. Islas obtained new counsel and filed his motion to

withdraw his plea **one month** after pleading guilty. **See id**. Gary filed his motion to withdraw pleas **nearly nineteen months** after pleading *nolo contendere*. We acknowledge that some of this delay may have resulted from the COVID-19 pandemic. Moreover, there was some evidence of a disagreement between Gary and plea counsel over strategy. However, Gary offered no specific explanation for his repeated requests for continuances of sentencing or the related status hearings, nor was there any evidence that Gary attempted to assert his own innocence, over these nineteen months.

Thus, we conclude **Islas** is distinguishable and does not compel reversal of the trial court's denial of Gary's pre-sentence motion to withdraw his *nolo contendere* pleas.[12] Accordingly, having reviewed the record, the trial court's opinion, and Gary's legal arguments, we conclude no relief is due.[13]

Judgment of sentence affirmed.

---

[12] To the contrary, the circumstances of this case are far closer to our Supreme Court's decision in **Norton**, wherein the Court affirmed the rejection of Norton's bare assertion of innocence, when Norton asserted his innocence **four months** after pleading *nolo contendere*, and explained he could not live with himself for pleading, and wanted to "test the Commonwealth's evidence." **Norton**, 201 A.3d at 121-23.

[13] Because we conclude Gary failed to establish reversible error concerning the fair-and-just reason standard, we need not address whether the Commonwealth demonstrated that a withdrawal of Gary's *nolo contendere* pleas would result in substantial prejudice. **See Carrasquillo**, 115 A.3d at 1293 n.9.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/5/2023