J-S13013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS CODY ALLEN FLOWER | : | |
| | : | |
| Appellant | : | No. 1291 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002405-2022

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: APRIL 26, 2024**

Appellant Douglas Cody Allen Flower appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County following his open guilty plea to the charges of neglect of care-dependent person and financial exploitation of older adult or care-dependent person.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On November 16, 2022, the Commonwealth filed an Information charging Appellant with crimes in connection with the neglect of the elderly victim, who was

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2713(a)(1) and 3922.1, respectively. The Commonwealth also charged Appellant with dealing in proceeds of unlawful activities, 18 Pa.C.S.A. § 5111(a)(1); however, the charge was *nol prossed* as part of the parties' plea agreement.

Appellant's father. On July 19, 2023, Appellant, who was represented by counsel, proceeded to a scheduled case status conference hearing.

At the commencement of the hearing, the trial court indicated Appellant's jury trial was set to begin on July 20, 2023. However, the Commonwealth indicated it had conveyed a plea offer to Appellant's counsel. Counsel confirmed he conveyed the plea offer to Appellant; however, he noted Appellant had not decided whether to accept or reject the plea offer. N.T., 7/19/23, at 6-7. The trial court informed Appellant that it was Appellant's decision as to whether to accept the plea offer. *Id.* at 7. The Assistant District Attorney ("ADA") noted: "This would be [Appellant's] last opportunity to consider that plea offer because, after we adjourn for the day, if we commence jury selection tomorrow morning, that plea offer will be withdrawn after we break." *Id.* at 9.

In response, the following exchange occurred:

THE COURT: [Appellant], again, the Commonwealth put that on the record. Again, I'm in no way, shape, or form guiding you one way or the other. I think you understand that because you and I have been pretty direct with each other here this afternoon. If you want, [Appellant], I would have the courtroom cleared out so you can speak to [defense counsel] if you wish. I do not want you to feel you're obligated to do so or having anything forced upon you. I'm not trying to insinuate anything.

[Appellant], do you want the opportunity to speak privately with [defense counsel] or do you just prefer that we just see you tomorrow morning when we pick a jury. There's no wrong answer, [Appellant].

[APPELLANT]: Thank you, Your Honor.

THE COURT: If [defense counsel] comes back in and says he needs more time, I would certainly be willing to accommodate that. We will make sure it's a private conversation.

I absolutely want to reiterate this, [Appellant]. Just because I'm letting you speak to [defense counsel] is not any type of even an insinuation on my part as to what you should do.

Do you understand that?

[APPELLANT]: Yes, I do, Your Honor.

THE COURT: Again, whether you want to speak about this resolution or you can talk more about trial strategy, I have no problem with that either way.

[Defense counsel], I'm not going to put actually any type of time limit on it.

[DEFENSE COUNSEL]: Thank you, Judge.

THE COURT: But, just for everybody's sake that's here, plan on about 15 minutes.

[DEFENSE COUNSEL]: Yes.

THE COURT: If you need more time than that, let us know.

***

[ADA]: I would just like to clarify one point, as far as the plea offer is concerned. The plea offer would be an agreement to a three to six years aggregate sentence.

[DEFENSE COUNSEL]: All right, that had to be clear to me, yes.

[ADA]: I just wanted to clarify that because I think there may have been a miscommunication.

An alternative plea offer would be Counts 1 and 3 as charged, so the felony one and felony two, with no agreement on sentence, but then the parties could make their respective sentencing arguments.

*Id.* at 10-13.

The trial court cleared the courtroom, and the record reveals Appellant and defense counsel met from 2:47 p.m. to 3:33 p.m. Apparently having conveyed he wished to accept the Commonwealth's plea offer, the ADA

- 3 -

entered the courtroom and informed Appellant that he should "look over [the packet [he] was just handed. It's all the documents that are associated with [the] guilty plea today." *Id.* at 14. A few minutes later, the trial judge entered the courtroom, and the following exchange occurred:

> THE COURT: When we had recessed previously, I gave you the chance to speak to [defense counsel] privately. That was some time ago. Do you feel you had enough time to speak to him about your possible options here this afternoon?
>
> [APPELLANT]: Yes, I have.
>
> * * *
>
> THE COURT: All right, [Appellant]. I have a document in front of me. Do you still have a copy of the defendant's statement of understanding of rights in front of you right now?
>
> [APPELLANT]: Yes.
>
> THE COURT: All right. I have a copy of that which has a signature above the line defendant. Is that your signature?
>
> [APPELLANT]: Yes, it is.
>
> THE COURT: All right. Now, did you review this document carefully?
>
> [APPELLANT]: No.
>
> THE COURT: All right, I appreciate your candor. I want you to read along, though, that's important because my job is to make sure that you understand your rights, the rights you have and the rights you're giving up. So, I'd rather have you say that than say I read it but didn't understand it. All right?
>
> Commonwealth, I'm going to take the lead on the colloquy.
>
> [ADA]: Thank you, your Honor.
>
> THE COURT: With regard to the first couple paragraphs, and this is somewhat stating the obvious, you have a constitutional right to a trial. Anybody charged with any criminal offense has a constitutional right to a trial. As you know, trial was scheduled, well, technically scheduled to begin tomorrow morning. By entering a plea of guilty you are giving up that right to go to trial.
>
> Do you understand that?

- 4 -

[APPELLANT]: Yes.

THE COURT: This document also indicates that you understand the charge which has been filed against you. I think there's been extensive conversation about that. That you received the paperwork. You're also, as you're well aware, entitled to the service of an attorney, that's also a constitutional right. And [defense counsel] is currently representing you. Do you acknowledge that?

[APPELLANT]: Yes.

THE COURT: Let's go back to paragraph three, [Appellant], the details. With regard to the right to trial by jury, you would have a right to sit there next to [defense counsel] tomorrow, assist in the selection of the 12 jurors that would hear your case. You are entitled to the presumption of innocence at trial, and you could not be found guilty of the charges or any of the charges unless all 12 jurors were convinced beyond a reasonable doubt, all 12, that the Commonwealth had proven its case.

Do you understand that?

[APPELLANT]: Yes.

THE COURT: By entering this plea, if I accept it, you are forever giving up that right to a trial on these charges.

Do you understand that?

[APPELLANT]: Yes, I do.

*Id.* at 14-18. Appellant confirmed he understood that, if he proceeded to trial, he could elect or not elect to testify. *Id.* at 25.

The ADA indicated the following:

So, [Appellant], I do want to start with…the terms of the plea bargain in this case. By signing the statement of understanding of rights you are acknowledging that there have been no other bargains, no other promise or threat of any kind that has caused you to induce—that has caused you to be induced into pleading guilty today….[Y]ou'll be pleading guilty to Counts 1 and 3, with Count 2 to be *nol prossed*, costs on the defendant. And there is no sentencing recommendation in this case.

Because there is no sentencing recommendation, and although we did discuss the possible sentencing guidelines in this

- 5 -

case previously during the brief status conference…I do still want to advise you because there is no recommendation that Count 1, being a felony of the first degree, carries a maximum possible period of incarceration of up to 20 years, a fine up to $25,000.00. Count 3, being a felony of the second degree, carries a maximum period of incarceration of up to ten years and a fine up to $25,000.00. And you could be sentenced consecutively at those counts so the maximum possible sentence that [the trial court judge] could impose, and I'm not saying that's what he will impose because there is no recommendation in this case, but he could sentence you to a period of incarceration up to 30 years and fines of up to $50,000.00. Do you have questions about anything as I've explained them to you?

[APPELLANT]: No, I do not.

*Id.* at 18-19. The trial court reiterated "there's not a specific recommendation" regarding sentencing. *Id.* at 19.

The trial court asked Appellant if he had received a copy of the criminal Information, and after Appellant confirmed his receipt thereof, the ADA provided the facts underlying Appellant's charges as follows:

Essentially, the time frame that's alleged in Count 1 states February 21, 2022, but the facts that would have been introduced at trial is that beginning in late 2021 and continuing through January 4, 2022, in Erie County, Pennsylvania, you, [Appellant], did intentionally, knowingly, or recklessly cause serious bodily injury by failing to provide treatment, care, goods or services necessary to preserve the health, safety or welfare of a care-dependent person for whom you were responsible. Specifically, that person was [your father]. And that your actions amounted to failing to feed [your father] for six to seven days at a time on multiple occasions, later causing him to be found in deplorable conditions lying on his bedroom floor unconscious and in mortal peril, eventually being admitted to UPMC Hamot with severe hypothermia. This course of conduct occurred in the area of [****] Saga Street in Lawrence Park Township, Erie County, Pennsylvania. And that by committing those acts you did commit the crime of neglect of a care-dependent person, a felony of the first degree.

- 6 -

*Id.* at 21. When asked how he was pleading to this charge, Appellant responded, "Guilty." *Id.*

Regarding Count 3, the ADA indicated:

It's further alleged at Count 3 that during the same course of time through the year 2021 and ultimately ending in February 21, 2022, that you, [Appellant] being in a position of trust of an older adult or a care-dependent person did carry out the wrongful or unauthorized taking or attempt to take by withholding, appropriating, concealing, or using the money, assets, or property of an older adult or care-dependent person. Specifically, you used [the victim's] debit card or a credit card to make 951 unauthorized transactions through two separate bank accounts and/or created a joint bank account in both your name and [the victim's] name without authorization and/or sold multiple items of [the victim's] property without his authorization amounting to an approximate total of $118,000.00—I'm sorry, $118,551.79 more or less, also occurring in the area of [****] Saga Street, Lawrence Park Township, Erie County, Pennsylvania, and that by doing so you committed the crime of financial exploitation of an older adult or care-dependent person, a felony of the second degree.

*Id.* at 22. When asked how he was pleading to this charge, Appellant responded, "Guilty." *Id.* The ADA confirmed that, as part of the plea agreement, it was moving to *nol pros* Count 2-dealing in proceeds of unlawful activities.

The trial court asked Appellant if he understood the charges, and Appellant responded, "Yes, I did." *Id.* at 24. Defense counsel also confirmed he was satisfied with the ADA's reading of the facts underlying the charges to which Appellant was pleading guilty. *Id.* Upon further questioning by the trial court, Appellant confirmed he was not taking any medication or any substance that would affect his ability to understand. *Id.*

The following exchange then occurred:

THE COURT: That leads me to what is now ultimately and solely your responsibility. I've going over with you very carefully the rights you have, the rights you're giving up. Do you understand that no matter what advice you've been given by [defense counsel] or by anybody else that the decision to plead guilty and give up your right to go to trial that has to be your voluntary and intelligent decision? Do you understand that?

[APPELLANT]: Yes, I do.

THE COURT: Do you accept that?

[APPELLANT]: Yes, I do.

THE COURT: All right, based upon that response, I hereby conclude that your decision to give up your right to go to trial tomorrow, enter a plea, is knowing and voluntary, that you understand the possible consequences of your plea. I would also note for the record that the Commonwealth [is] prepared to proceed. The Commonwealth had made arrangements to bring in witnesses tomorrow.

\*\*\*

So, to summarize, [Appellant], there's absolutely no law or statute that says I can prohibit you from trying to withdraw your plea, I am just telling you that I'd be the one making that decision and that's why this colloquy with you has been so thorough. I'm trying to make sure you understand what you're doing, and you accept responsibility for it. Does that make sense to you?

[APPELLANT]: Yes.

*Id.* at 25-26.

The trial court indicated it was accepting Appellant's guilty plea as to Counts 1 and 3, as well as granting the Commonwealth's request to *nol pros* Count 2.

Prior to the sentencing hearing, on August 3, 2023, Appellant filed a counseled motion to withdraw his guilty plea. Therein, Appellant averred "he wished to withdraw his guilty plea as he believes he is innocent, and counsel

- 8 -

talked him into a guilty plea….[Appellant] is maintaining his innocence [in] this case." Appellant's Presentence Motion to Withdraw Guilty Plea, filed 8/3/23.

The Commonwealth filed a response in opposition thereto, and on September 8, 2023, the trial court held a hearing on Appellant's presentence motion to withdraw his guilty plea. During the hearing, Appellant informed the trial court he wanted to withdraw his guilty plea because he was "not guilty of the charges filed against me." N.T., 9/8/23, at 3. Appellant indicated that he "pled guilty because I wanted out of jail. I've been in here over a year and a half, or over—almost 14 months. It's been long enough. I want release from prison. I've had enough of this. I am not guilty." *Id.* at 15.

In response, the Commonwealth noted Appellant admitted his guilt during an extensive guilty plea colloquy. *Id.* at 4-5, 15. The Commonwealth averred Appellant's "blanket claim of innocence does not satisfy" the standard for withdrawal. *Id.* at 8. The Commonwealth indicated there is no evidence Appellant's counsel pressured him to plead guilty, and the ADA averred he "believe[s] that [Appellant] just simply is [seeking to withdraw] his plea and blaming all of this on his attorney because he doesn't like that he's been told the truth by [his attorney] throughout this process." *Id.* at 13-14.

The Commonwealth then made an extensive proffer of evidence and witnesses that it would present if the case were to go to trial. *Id.* at 10-12. Specifically, the Commonwealth indicated police officers would have testified

they responded to Appellant's residence where they found the victim, his father, living in "deplorable conditions." *Id.* at 10. The victim was comatose, covered in feces/urine, and hypothermic. *Id.* When he regained consciousness, the victim reported Appellant "fed him maybe one to two times per week," and the victim had lost "in excess of a hundred pounds as a result of [Appellant's] failure to feed or properly hydrate [the victim]." *Id.* "The victim was covered in insect bites, skin conditions, things of that nature." *Id.* at 11. The victim, as well as his daughter, and the police would have testified Appellant made "951 unauthorized [bank] transactions, as well as [conducted unauthorized] dealings in some of the real property and movable property of the victim, totaling $118,551.79." *Id.*

Moreover, the Commonwealth noted that it would be prejudiced if Appellant were permitted to withdraw his guilty plea since the victim, as well as many of the witnesses, were "elderly or infirm people" with fading memories. *Id.* at 13. Further, the Commonwealth noted Appellant waited until "the eve of jury selection" to accept the Commonwealth's guilty plea offer. *Id.* at 5.

By order and opinion entered on September 25, 2023, the trial court denied Appellant's presentence motion to withdraw his guilty plea. On September 29, 2023, Appellant proceeded to a sentencing hearing at which Appellant's counsel requested a concurrent standard range sentence. Specifically, Appellant's counsel requested the trial court impose an aggregate

sentence of "11 and a half to 23 [months] followed by a period of supervision." N.T., 9/29/23, at 9. The Commonwealth, on the other hand, requested consecutive aggravated range sentences due to the "horrifying" nature of the case, including Appellant's long-term neglect of the victim, who lived solely with Appellant. *Id.* at 10.

The trial court imposed consecutive standard range sentences. Thus, Appellant received an aggregate sentence of 42 months to 84 months in prison. On October 27, 2023, Appellant, represented by new counsel, filed a timely notice of appeal. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issue in his "Statement of Questions Involved" (verbatim):

> The trial court erred in failing to allow the Defendant to withdraw his guilty plea when the defendant maintained that his attorney incorrectly persuaded him into entering a plea rather than fighting the charges at a trial and maintained that he was innocent.

Appellant's Brief at 1 (unnecessary bold and capitalization omitted).

Appellant contends the trial court abused its discretion in denying his presentence motion to withdraw his guilty plea. We review the trial court's denial of Appellant's presentence motion to withdraw his guilty plea for an abuse of discretion. *Commonwealth v. Baez*, 169 A.3d 35, 39 (Pa.Super. 2017); *Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa.Super. 2017).

As this Court recently held:

> Where a defendant requests to withdraw his guilty plea before he is sentenced, the trial court has discretion to grant the

- 11 -

withdrawal and that discretion is to be liberally exercised to permit withdrawal of the plea if two conditions are present: 1) the defendant demonstrates a fair and just reason for withdrawing the plea and 2) it is not shown that withdrawal of the plea would cause substantial prejudice to the Commonwealth. *Commonwealth v. Carrasquillo*, 631 Pa. 692, 115 A.3d 1284, 1291-92 (2015); *Baez*, 169 A.3d at 39; *Islas*, 156 A.3d at 1188; *see also* Pa.R.Crim.P. 591(A) ("At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant,…the withdrawal of a plea of guilty or *nolo contendere* and the substitution of a plea of not guilty")[.]

*Commonwealth v. Jamison*, 284 A.3d 501, 505 (Pa.Super. 2022).

Appellant claims he demonstrated a "fair and just reason" for withdrawing his plea. Specifically, Appellant avers he maintained his innocence, and he entered his guilty plea the day before trial because he was "pressured" by his attorney to plead guilty. *See* Appellant's Brief at 5.

A plausible claim of innocence, supported by some facts or evidence in the record, constitutes a fair and just reason for allowing presentence withdrawal of a guilty plea. *Islas*, 156 A.3d at 1191-92. Where, however, the defendant merely makes a bare assertion that he is innocent without any proffer of any supporting basis for that claim, the trial court in its discretion may deny withdrawal on the ground that the defendant has not shown a fair and just reason for withdrawal of the plea. *Commonwealth v. Norton*, 650 Pa. 569, 201 A.3d 112, 120-23 (2019); *Commonwealth v. Hvizda*, 632 Pa. 3, 116 A.3d 1103, 1105, 1107 (2015); *Baez*, 169 A.3d at 39-41.

*Jamison*, 284 A.3d at 505 (some citations omitted). *See Carrasquillo*, *supra* (holding a fair and just reason exists where the defendant makes a claim of innocence that is plausible).

"Stated more broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such

that permitting withdrawal of the plea would promote fairness and justice." **Norton**, **supra**, 201 A.3d at 120-21[.] "[T]rial courts have discretion to assess the plausibility of claims of innocence." **Id.** at 121.

We review that exercise of discretion as follows:

When a [trial] court comes to a conclusion through the exercise of its discretion, there is a heavy burden [on the appellant] to show that this discretion has been abused. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Absent an abuse of that discretion, an appellate court should not disturb a trial court's ruling.

\*\*\*

[I]t is important that appellate courts honor trial court's discretion in these matters, as trial courts are in the unique position to assess the credibility of claims of innocence and measure, under the circumstances, whether defendants have made sincere and colorable claims that permitting withdrawal of their pleas would promote fairness and justice.

**Norton**, **supra**, 201 A.3d at 120, 121 (citations omitted).

The trial court's discretion, however, is not unfettered. "[T]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge." **Id.** at 121[.] The trial court must be mindful that the law requires trial courts to grant presentence plea withdrawal motions liberally and make credibility determinations supported by the record. **Id.** The trial courts in exercising their discretion must recognize that before judgment,

- 13 -

the courts should show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our constitution. Finally, this Court must not substitute its judgment for that of the trial court; rather, we must discern whether the trial court acted within its permissible discretion. **Norton**, **supra**, 201 A.3d at 121.

**Commonwealth v. Garcia**, 280 A.3d 1019, 1023-23 (Pa.Super. 2022) (some

quotation marks and quotations omitted).

Here, in explaining the reasons it concluded Appellant did not have a

"fair and just reason" for withdrawal of his plea, the trial court relevantly

indicated the following:

> At the hearing on July 19, 2023, (the day before trial was set to begin),…the Commonwealth explained, in great detail, the plea offer. [The trial court] then gave [Appellant] and his attorney as much time as needed to discuss the plea offer. Following the discussion, [Appellant] agreed to plead to two counts.
>
> [The trial court] conducted a very thorough colloquy before accepting the plea. During the colloquy, [Appellant] agreed (under oath) that no promises or threats had been made to him that caused him to plead. The relevant counts in the information were read to [Appellant], and he did not disagree with the facts. [The trial court] further stated: "Do you understand that no matter what advice you've been given by [your attorney] or by anyone else that the decision to plead guilty and give up your right to go to trial has to be your voluntary and intelligent decision?" [Appellant] replied, "Yes, I do."
>
> Based on the colloquy, [the trial court] noted that "based upon that response, I hereby conclude that your decision to give up your right to trial tomorrow, and enter a plea [today], is knowing and voluntary, that you understand the consequences of your plea. I would also note for the record that the Commonwealth is prepared to proceed. The Commonwealth has made arrangements to bring in witnesses tomorrow."

At the September 8, 2023, hearing, the only reason [Appellant] gave for wanting to withdraw his plea was that he was innocent, and that his attorney "talked me into it."

\*\*\*

[Appellant] entered his plea the day before his trial was to begin. At the withdrawal hearing, [Appellant] asserted his innocence, but gave no details to support that claim….To the contrary, the Commonwealth indicated that there was substantial evidence of [Appellant's] guilt, including the testimony of the victim and his family, as well as bank withdrawals. Moreover, [the trial court] conducted a thorough colloquy at [Appellant's] plea [hearing], at which time [Appellant] indicated, under oath, that he understood the decision to plead guilty had "to be your voluntary decision."

\*\*\*

In sum, although given the opportunity, [Appellant] did not make a colorable demonstration, under the circumstances, that permitting the withdrawal of his plea would promote fairness and justice. His claim of innocence is belied by the evidence, and thus not plausible. [The trial court] conducted a detailed colloquy, and [Appellant] indicated he understood what he was doing when he pled guilty.

Trial Court Opinion, filed 9/25/23, at 2-4 (citations to record omitted).

We find no abuse of discretion. **Norton**, **supra**. Appellant avers that he was "pressured" to plead guilty by his attorney. However, as the trial court found, Appellant's averment is belied by the record.

Specifically, the day before jury selection was set to commence, during a case status conference, the trial court was advised there was a plea agreement "on the table." Accordingly, the trial court informed Appellant that he could either proceed with trial as scheduled or speak to his counsel further about the Commonwealth's plea offer. N.T., 7/19/23, at 11. The trial court indicated Appellant was not obligated to speak to counsel about the plea offer,

and the trial court was not trying to guide Appellant in one direction or the other. *Id.* Appellant indicated he understood and wished to communicate further with counsel. *Id.*

Approximately forty-five minutes later, the parties, as well as the trial court judge, re-entered the courtroom, and Appellant confirmed he had adequate time to speak to his counsel. *Id.* at 15. The Commonwealth set forth the terms of the agreed upon plea bargain, and Appellant confirmed he had no questions. *Id.* at 19. The Commonwealth set forth the facts underlying Counts 1 and 3, and Appellant confirmed he understood the charges. *Id.* at 24. For each Count, Appellant specifically stated he was "Guilty." *Id.* at 21-22. Appellant is bound by his statements, and he cannot now assert challenges to the plea that contradict his statements. *See Jamison*, *supra*.

Moreover, Appellant confirmed that he understood the decision to plead guilty was solely his decision to make, and the decision was not to be made by his counsel. N.T., 7/19/23, at 25. Appellant specifically confirmed he understood what he was doing by pleading guilty, and he was accepting responsibility for doing so. *Id.* at 26. Appellant confirmed he was signing a plea agreement, and by doing so, he was "acknowledging that there have been no other bargains, no other promise or threat of any kind that has caused [him] to induce—that has caused [him] to be induced into pleading guilty

today." ***Id.*** at 18. As indicated *supra*, Appellant is bound by these statements, and he cannot now make assertions contrary thereto. ***See Jamison***, ***supra***.

Further, we note that in assessing the plausibility of Appellant's claim of innocence, the trial court properly considered the strength of the Commonwealth's evidence (including statements by the victim, his other family members, and evidence of the bank withdrawals) in relation to the nature of Appellant's claim (consisting solely of Appellant's bald claim of innocence, which the trial court found incredible). ***See Garcia***, 280 A.3d at 1027; ***Islas***, 156 A.3d at 1190.

For all of the foregoing reasons, we conclude the trial court did not abuse its discretion in finding Appellant's claim of innocence was not plausible. ***See Norton***, ***supra***. Thus, the trial court did not err in holding Appellant did not have a fair and just reason for allowing the presentence withdrawal of his guilty plea. ***See Jamison***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 4/26/2024